## DAVIDSON v. STATE.

## Opinion delivered June 9, 1913.

1. INDICTMENT.—CHARGING AN OFFENSE IN DIFFERENT MODES—ELECTION BETWEEN COUNTS.—Where an indictment charges in several counts the same offense committed by defendant in different modes, and does not charge the commission of more than one offense, it is not error to refuse to compel the prosecuting attorney to elect to stand on a single count. (Page 195.)

2. RECORD ENTRY—CONFLICT BETWEEN RECORD ENTRY AND BILL OF EXCEPTIONS.—When there is a conflict between the recitals of the record entry proper and those in the bill of exceptions, the former must prevail (Page 196.)

3. TRIAL—CONSTITUTIONAL GUARANTEE TO ACCUSED.—Under art. 2, § 10, of the Constitution, which provides that in a criminal trial the defendant shall be confronted by witnesses against him, have

process to compel attendance of witnesses in his favor "and to be heard by himself and counsel," it is guaranteed that an accused shall have the privilege of being present in person and by counsel whenever any substantive step is taken by the court in his case. (Page 197.)

4. TRIAL — CRIMINAL PRACTICE — VERDICT — PRESENCE OF ACCUSED — WAIVER.—Under Constitution, art. 2, § 10, and Kirby's Digest, § 2339, in a capital case the defendant may, after the trial has commenced, waive his personal presence at a step in the progress of the trial, such as receiving the verdict, and when his presence has been duly waived, a judgment will not be reversed on account of his absence upon his own consent, unless it appears that he was prejudiced in some way by such absence. (Page 198.)

5. CRIMINAL PRACTICE—VERDICT IN ABSENCE OF DEFENDANT.—Where defendant through his counsel requested the court to permit the removal of defendant from the county for fear of violence from a mob, when the court granted the request, defendant can not complain that the verdict was returned in his absence. (Page 199.)

6. ATTORNEY—WAIVER OF ACCUSED THROUGH ATTORNEY OF PRESENCE WHEN VERDICT RECEIVED—AUTHORITY—PRESUMPTION.—A defendant accused of first degree murder may, through his attorney, waive his presence when the verdict of the jury is received; and in the absence of a showing to the contrary, the authority of the attorney will be presumed. (Page 203.)

7. HOMICIDE — CIRCUMSTANTIAL EVIDENCE — SUFFICIENCY. — Evidence, though circumstantial, held sufficient to warrant the finding of the jury that defendant was guilty of murder in the first degree. (Page 208.)

8. EVIDENCE—CONTRADICTORY STATEMENTS—INADMISSIBLE FOR ALL PURPOSES—ERROR NOT PREJUDICIAL WHEN.—In a trial for murder, when a witness testifies to a certain state of facts, and is asked on cross examination if he did not make contradictory statements before the grand jury, and he admits that he did, the testimony is admissible only for the purpose of contradicting the witness, and not as substantive evidence of the facts related in the contradictory statement; but where the court admits the testimony for all purposes, the defendant is not prejudiced where the facts stated on the contradicting testimony are proved by other witnesses. (Page 208.)

9. APPEAL AND ERROR — EVIDENCE—ADMISSIBILITY—ERROR NOT PREJUDICIAL WHEN.—Where defendant is being tried for murder it is competent for counsel for defendant to interrogate a witness offered by the State, in order to determine his credibility, but where the court refused to permit such questions, defendant is

not prejudiced, when the facts stated by the witness were thoroughly established by the testimony of several other witnesses which are uncontradicted. (Page 209.)

10. EVIDENCE—CIRCUMSTANTIAL EVIDENCE—COMPETENCY.—In a trial for murder, evidence of the finding of defendant's pistol near the scene is competent, being a fact to go to the jury as a circumstance indicating defendant's presence there on the occasion of the killing. (Page 210.)

11. EVIDENCE—CIRCUMSTANTIAL EVIDENCE — COMPETENCY.—Evidence of the finding of an axe two days after the killing, and testimony that blood on the same was human blood, *held* competent. (Page 210.)

12. EVIDENCE—STATEMENTS OF DEFENDANT.—Where a witness stated that upon one occasion defendant had used language about deceased which she did not care to repeat, *held*, it was not error to permit witness to state why she did not care to repeat it; witness not being asked what the language was. (Page 210.)

13. TRIAL—ARGUMENT OF COUNSEL.—Where in a trial for murder, the prosecuting attorney used this language in his argument to the jury: "You have a right to consider this conversation with Miss Barham in presence of her sister, gentlemen of the jury, so unexplained by any one and unexplained and undenied by any one, and I call on them now to explain this conversation, if true," is not improper as a comment on the failure of defendant to testify. (Page 211.)

Appeal from Boone Circuit Court; *George W. Reed*, Judge; affirmed.

*E. G. Mitchell* and *Guy L. Trimble*, for appellant; *W. P. Smith*, of counsel.

1. The right of a defendant to be present in a felony case is both statutory and constitutional. Kirby's Dig., § 2339; Const., art. 2, § 10; 5 Ark. 431; 10 *Id.* 325; 58 *Id.* 239; 30 *Id.* 328; 62 *Id.* 537; 44 *Id.* 331; 100 *Id.* 334; 146 U. S. 374; 4 Sup. Court Reporter, 204; 28 Am. Dec. 629, and notes; 110 U. S. 524; 40 Ala. 325; 49 Cal. 41; 8 Col. 457; 37 Fla. 162; 55 Ga. 521; 14 Bush, 769; 30 La. 367; 53 Miss. 363; 84 N. C. 412; 4 Ore. 198; 99 Va. 816; 85 Wis. 400; 90 Mo. 37; 20 S. W. 758. All the courts hold that receiving the verdict in defendant's absence is error.

2. The waiver of counsel could not bind defendant. The right to be present can not be waived. 28 Am. Dec.

630, and notes; 12 Fla. 562; 97 N. C. 404; 24 Ark. 634; 20 L. R. A. (N. S.), 510; 110 U. S. 524; 146 *Id.* 374; 4 S. C. Rep. 204, and cases *supra.*

3. The receiving of a void verdict acts as an acquittal. Cases *supra;* 53 Miss. 363; 83 Ind. 331; 19 Kan. 445; 60 Minn. 90; 29 Tex. App. 62; 6 S. W. 646; 43 Ark. 271; 48 *Id.* 38; 31 Am. Rep. 31; 19 *Id.* 719; 24 Ark. 629.

4. The admission of the testimony of Alex Davidson as to what he swore before the coroner's jury and the grand jury and the remarks of counsel thereon were erroneous and prejudicial. 72 Ark. 584; 100 *Id.* 344; 51 *Id.* 115; 93 *Id.* 324; 52 Am. St. Rep. 717.

5. It was error not to sustain the motion to elect on which count the State would prosecute. 69 Ark. 184; 60 *Id.* 554; 48 *Id.* 94; Kirby's Dig., § 2230.

6. The instructions are erroneous (136 Mo. 41-45), especially as to reasonable doubt and as to crimes committed by means of poison, lying in wait, burglary, arson, robbery, etc. Defendant was only charged with murder. 69 Ark. 184.

*Wm. L. Moose,* Attorney General, and *John P. Streepey,* Assistant, for appellee; *Gus Seawel,* of counsel.

1. The evidence sustains the conviction. The motive was shown.

2. Appellant was present when the verdict was rendered as the *record* recites. While the bill of exceptions seems to indicate his absence and that he had by counsel waived his right to be present, the *record* is supreme and must prevail. 97 Ala. 49, 51; 165 *Id.* 18; 3 Col. 396; 3 Cyc. 153; 42 So. 380; 107 S. W. 420, 135 *Id.* 28; 17 Ark. 532; 24 *Id.* 499, 505; 23 *Id.* 131; 22 *Id.* 365; 72 *Id.* 320; 87 *Id.* 50; 10 L. R. A. 933-6; 144 S. W. 208.

3. The right to be present when the verdict is rendered is not a constitutional right, and may be waived. Const., art. 2, § 10; 43 Ark. 391; 46 *Id.* 141, 147; 20 L. R. A. (N. S.), 511.

4. He was not prejudiced by the verdict being rendered in his absence. 104 Ark. 629; 50 Ark. 492, 499.

5. There was no error in admitting the testimony of Alex Davidson as to his former testimony. 76 Ark. 276. But if error, no objection was made. 92 *Id.* 237, 239; 80 *Id.* 364.

6. The remarks of the court were neither erroneous nor prejudicial. 2 Ark. 512, 574; 83 *Id.* 379.

7. The appellant was only charged with *one* crime in different counts. 50 Ark. 305, 313; 71 *Id.* 574.

8. There is no error in the instructions. They are well sustained. 105 Ark. 37; 106 Ark. 362; Kirby's Dig., § 1766; 29 Ark. 248, 268; 37 *Id.* 238, 254.

McCulloch, C. J. The defendant, Odus Davidson, was convicted of the crime of murder in the first degree. He is accused in the indictment of murdering Ella Barham, a young woman about eighteen years of age, who lived in Boone County, Arkansas, in the same neighborhood where defendant resided and where he had been reared.

There are several counts in the indictment, each charging the defendant with the crime of murder in the first degree, committed in different modes by killing Ella Barham. Each count of the indictment is legally sufficient as a charge of the crime of murder in the first degree, and the indictment concludes with the following clause, namely: "It being intended throughout each count in this indictment to charge the offense herein set out as having been committed in different manners and by different means, but all referring to one and the same transaction."

The defendant moved the court to require the prosecuting attorney to elect upon which count of the indictment he would proceed. The court overruled the motion, and that ruling is assigned as error.

The indictment presents a clear instance of charging the same offense committed in different modes. It does not charge the commission of more than one offense and it is, therefore, not open to the objection that different offenses are named therein. *Corley* v. *State,* 50 Ark. 305.

The next assignment of error is that the trial was vitiated on account of the verdict of the jury being received by the court in the absence of the defendant.

The record entry of the trial and judgment recites the presence of defendant in person and by his attorneys, but the circuit judge has certified in the bill of exceptions that the defendant was not present in person when the verdict was returned and that his attorneys were present and entered into a written stipulation for him consenting that the verdict might be returned in his absence. The recital on this subject in the bill of exceptions reads as follows:

"Two or three hours after the jury had retired in the charge of the officers, under the instructions of the court to consider their verdict, and on the same day, there was a consultation between the attorneys for the defendant and the court in the absence of both the defendant and the prosecuting attorney, and upon the request of the attorneys for the defendant, and upon the specific understanding that the agreement be reduced to writing, waiving the presence of the defendant, if a verdict was returned in his absence, the court and the attorneys for the defendant believing there was danger of a mob, and such action being in the interest of the defendant, the court ordered the sheriff, without the agreement of the prosecuting attorney, and over his objections, to convey the defendant to the jail at Berryville, Carroll County, Arkansas. The defendant was present at all times, either in person or by attorney. Such agreement and waiver was prepared by defendant's counsel, and signed by the said E. G. Mitchell and B. B. Hudgins and other counsel in the case, which written waiver was in words as follows." (Here follows copy of the written stipulation.)

Where there is a conflict between the recitals of the record entry proper and those in the bill of exceptions, the former must prevail; but inasmuch as the circuit judge has certified the facts in the bill of exceptions and defendant's counsel have asked for a postponement of

the case here until the circuit court convenes again and an opportunity can be given for an amendment of the record, we would not dispose of the question adversely to defendant's contention without giving him an opportunity to have the record amended if an amendment in accordance with his contention would bring about a different result in the disposition of the case. We will, therefore, treat the record as amended so as to show his absence by consent as recited in the bill of exceptions, and will test his right to a reversal of the judgment on that state of the record.

The Constitution (art. 2, § 10) provides that "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury * * *; and to be informed of the nature and cause of the accusation against him, and to have a copy thereof; and to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and *to be heard by himself and his counsel.*"

A section of the Code of Criminal Procedure reads as follows:

"If the indictment be for a felony the defendant must be present during the trial. If he escapes from custody after the trial has commenced, or, if on bail, shall absent himself during the trial, the trial may either be stopped or progress to a verdict, at the discretion of the prosecuting attorney, but judgment shall not be rendered until the presence of the defendant is obtained." Kirby's Digest, § 2339.

It is insisted on behalf of the State that the constitutional provision quoted above does not guarantee the right of an accused person to be present when the verdict is returned, and that the judgment should not be reversed on account of the absence of the defendant when the verdict was rendered unless it appears that his absence operated to his prejudice.

We do not think, however, that that contention is sustained by the decisions of this court.

The language of the Constitution, "to be heard by

himself and his counsel," is a guarantee that an accused shall have the privilege of being present in person and by counsel whenever any substantive step is taken by the court in his case. *Bearden* v. *State,* 44 Ark. 331. Chief Justice COCKRILL, speaking for the court in the case just cited, said:

"Under this rule it is not necessary that the accused shall show that he was actually prejudiced by the proceeding had in his absence. It is sufficient to annul the verdict against him if it appears that he may have lost an advantage or been prejudiced by reason of a step taken in his absence. The reason of the rule is to secure to the accused full facilities for defense. However, while he can not be deprived of his right to be present at all stages of his trial, it does not follow that he must be. The statute provides that certain proceedings may be had in the absence of a defendant who absconds, or is on bail and absents himself. Where, also, no prejudice could by any possibility result from the action of the court, there is no reason for requiring the presence of the defendant."

The Constitution does not provide that the defendant *must* be present, but that he *may* be present. It is a privilege which is conferred and does not relate to the power of the court to conduct the successive steps in the trial.

The statute referred to reads that the defendant *"must* be present during the trial."

The statutory provision is, however, not for the benefit of the accused, but for the State. *Martin* v. *State,* 40 Ark. 364.

The list of authorities cited by counsel for appellant discloses decisions to the effect that in capital cases the accused can not waive his presence when the verdict is received or at any other substantive step in his trial; and there are a few decisions to the effect that, even in felony cases other than capital, the accused can not waive his presence at any step in the progress of the trial.

It may be said here, however, without further dis-

cussion, that according to the great weight of authority, in felony cases other than capital, the accused may waive his presence. 12 Cyc. 527.

In a recent decision of the Supreme Court of Mississippi, the court held that, where the defendant was charged with a capital offense (murder in the first degree), but was convicted of the lower offense of manslaughter, the trial was vitiated by the fact that the accused was absent. *Sherrod* v. *State*, 93 Miss. 774, 47 So. 554, 20 L. R. A. (N. S.), 509. The recital of facts in that case shows that the defendant was on bond and voluntarily absented himself at the time it was announced that the verdict of the jury would be received; but the court held that he could not waive his presence when that important step in his trial was taken.

The Supreme Court of the United States also held that a person accused of a capital offense can not waive his presence at a substantive step in the proceeding. *Hopt* v. *People*, 110 U. S. 574. The grounds of the decision were stated for the court by Mr. Justice Harlan as follows:

"We are of the opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirement as to his personal presence at the trial. The argument to the contrary necessarily proceeds upon the grounds that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. But this is a mistaken view, as well of the relations which the accused holds to the public as of the end of human punishment. * * * The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty can not be dispensed with or affected by the consent of the accused; much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offense committed, but the prevention of

future offenses of the same kind. 4 Bl. Com. 11. Such being the relation which the citizen holds to the public, and the object of punishment for public wrongs, the Legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him."

It will be thus seen that that court based its conclusions on the ground that the accused could not waive his presence for two reasons; one, that the power of the court to act depended upon the presence of the accused; and, next, that the public interest in the result of the trial deprived him of the power to give his consent to his absence.

These grounds are, we think, far from tenable, and neither of the cases quoted from above appeals to us as stating sound conclusions; nor are the conclusions reached there in accordance with the decisions of this court.

The power of the court to proceed does not depend upon the personal presence of the accused. Only his right to be present is guaranteed by the Constitution and laws of this State. Any other construction of the constitutional provision would render invalid the statute which provides that if the accused escape from custody after the trial has commenced, or, if on bail, the accused shall absent himself, the trial may progress to a verdict notwithstanding his absence.

This court has declared that statute to be a valid one. *Gore* v. *State*, 52 Ark. 285.

The fact that the statute permits the accused, by his voluntary absence, to waive his presence at the trial, demonstrates that the power of the court to act does not depend upon the presence of the accused, and that it is only where steps are taken in the absence of the latter without his consent, that his rights are violated.

The converse necessarily is true that, where he vol-

untarily absents himself, the court may proceed with the trial in his absence.

Other constitutional guaranties of equal importance and dignity may, according to our decisions, be waived by an accused person.

The Constitution guarantees to the accused the right to have a copy of the indictment; but that may be waived. *McCoy* v. *State,* 46 Ark. 141; *Powell* v. *State,* 74 Ark. 355; *Hobbs* v. *State,* 86 Ark. 360.

It provides that the accused shall be "informed of the nature and cause of the accusation against him;" that is to say, he shall be arraigned. The statute also provides that he shall be arraigned before trial. But this court held that it is a right which can be waived. *Ransom* v. *State,* 49 Ark. 176; *Moore* v. *State,* 51 Ark. 130; *Hayden* v. *State,* 55 Ark. 342.

In *Hobbs* v. *State, supra,* the court held that, even without a formal waiver of arraignment, a judgment would not be reversed "if the record shows that the defendant received every right which he would have received had he been duly arraigned."

The Constitution also provides that the accused has the right "to be confronted with the witnesses against him," but who can doubt for a moment that the accused, even in a capital case, may waive the production of a witness and agree what his testimony will be and consent that it shall go to the jury. The following decisions by other courts settle that question: *Rosenbaum* v. *State,* 33 Ala. 354; *Butler* v. *State,* 97 Ind. 378; *State* v. *Palson,* 29 Iowa, 133; *State* v. *Fouks,* 65 Iowa, 452; *State* v. *Harnsby,* (La.) 41 Am. Dec. 305; *People* v. *Ulunay,* 52 Mich. 288;; *State* v. *Wagner* (Mo.), 47 Am. Rep. 131; *Williams* v. *State,* 61 Wis. 281; *Hancock* v. *State,* 14 Tex. App. 392; *Allen* v. *State,* 16 Tex. App. 237. Now, if those privileges, which are equally guaranteed by the Constitution, may be waived, why may not the accused waive his own presence at some step of the trial?

This court in a number of cases has decided that the defendant in a felony case may waive his presence.

In *Polk* v. *State,* 45 Ark. 165, it was held that it was not error for the trial court to make an order in the absence of the defendant for a change of venue. The court said, in disposing of the question, that the trial court did nothing in the premises except to grant the request of the defendants, and that they could not possibly have been prejudiced by their absence. ·

In *Bond* v. *State,* 63 Ark. 504, the court held, as in the Polk case, *supra,* that it was not reversible error to make an order for a change of venue in the absence of the defendant.

In *Baker* v. *State,* 58 Ark. 513, it was held that the defendant could in person waive the presence of his counsel when the verdict was returned.

In *Darden* v. *State,* 73 Ark. 315, we held that the defendant, if on bail, could not complain of the examination of witnesses during his voluntary absence.

It is true that none of these was a capital case; but we do not perceive any difference when it comes to the question of the power of the accused to waive some of the privileges that are guaranteed to him by the Constitution and laws. It is the duty of trial courts, in that class of cases, to guard more carefully the rights of accused persons and to see that their rights are not prejudiced; but, after all, the test of the power of the court in a capital case with respect to the presence of the accused is the same as in any other felony cases. Our laws make no distinction. This court has held that one accused of the crime of murder may enter a plea of guilty, but that, on account of the statutory limitation upon the powers of the court, a jury must be empaneled to pass upon the degree of the offense. *Lancaster* v. *State,* 71 Ark. 100.

In *McVay* v. *State,* 104 Ark. 629, where the defendant was convicted of murder in the first degree, we held that he had the power to waive the presence of the trial judge during the progress of the argument of the case and to consent to the argument being proceeded with in the absence of the judge.

*Powell* v. *State, supra,* is a case where the defendant was convicted of murder in the first degree, and we held that the defendant could waive his right to service of a copy of the indictment.

Our conclusion is that the accused may, even in a capital case, after the trial has commenced, waive his personal presence at a step in the progress of the trial such as receiving the verdict, and that where his presence has been duly waived, this court should not reverse a judgment on account of his absence upon his own consent, unless it appears that he was prejudiced in some way by such absence.

In this case the court did no more than grant the request, conveyed to the court through defendant's counsel, that he be removed from the court and from the county for his own safety from threatened mob violence. If he and his counsel conceived it to be necessary for his own safety that he should be absent from the county during the further progress of the trial, he can not now complain that the verdict was returned in his absence.

It is next contended that the defendant himself did not waive his presence at the trial and that his counsel could not waive it for him.

It may be conceded that counsel, in the absence of the defendant and without authority from him, can not waive a personal privilege guaranteed to him by the Constitution.

That, however, is not the case before us. The record shows that his counsel acted for him and in his name consenting to the verdict being returned in his absence. The presumption must be indulged, in the absence of a showing to the contrary, that the attorneys had authority from him to enter into the stipulation waiving his presence. *Martin* v. *State, supra.*

"The general presumption," says Judge Elliott in his work on Appellate Procedure, section 718, "is that the judgment of a judicial tribunal is supported by whatever is essential to its validity and effectiveness."

Such is the view of this court expressed in the case of *Bond* v. *State, supra.*

It is not essential to a valid waiver that the defendant should make the agreement in his own person. He may do so through his counsel, and, as before stated, in the absence of a showing to the contrary, authority to perform an act in the progress of the trial, which counsel assume to do, will be presumed.

Counsel for defendant rely upon the case of *Osborn* v. *State,* 24 Ark. 629, as sustaining their contention that the defendant can not waive his presence, if he can do so at all, except by his own act, and can not do so through his counsel.

The case does sustain that contention. It appears from the opinion that the court reversed the judgment simply because the transcript failed to show that the defendant was present when the time for service of a copy of the indictment was waived.

We think that decision is in conflict with subsequent decisions of this court, just cited, and that it has, in effect, been overruled.

The defendant filed with the motion for new trial his affidavit, in which he stated that he did not authorize his counsel to enter a waiver of his presence and that he did not know that it had been done until after the verdict was rendered, and did not know that the verdict was to be rendered in his absence. The affidavit did not however, establish conclusively the truth of the statement that he did not consent to the waiver. Under all the circumstances the court was justified in finding that, notwithstanding the defendant's affidavit to the contrary, he did authorize his attorneys to take this step.

Many questions are raised as to the admissibility of testimony, and it is necessary to refer to the facts of the case, which we will do as briefly as possible.

Defendant and deceased lived in the same neighborhood in Boone County, where the crime is alleged to have been committed. Defendant lived with his father, who was a farmer in that locality. Deceased lived with her

parents a few miles distant. Deceased met her death on
Thursday, November 21, 1912, while she was returning
from the home of a neighbor. She left home about 9
o'clock in the morning, and went over to the home of a
Mrs. Briant, for the purpose of procuring the services
of the latter in making a hat. She rode horseback, and
in making the trip it was necessary for her to pass the
house of defendant's parents. She stopped there on her
trip over to Mrs. Briant, and conversed with defendant's
mother. The evidence tends to show that she reached
Mrs. Briant's home between 9 and 10 o'clock in the morn-
ing, and after remaining there for a while she started
on her return home about 11 o'clock. She was never
seen again after she passed the Davidson's home on her
return from Mrs. Briant's house. The members of her
family became alarmed late in the afternoon at her fail-
ure to return, and they, together with other neighbors,
instituted a search for the body. They first found the
horse which she had ridden, and later found her dismem-
bered body in the woods a few hundred yards distant
from the defendant's home. The body was horribly mu-
tilated. The face was mashed and bruised, the nose
being mashed in, the skull fractured in several places
and the flesh mashed away from the teeth. The head
was completely severed from the neck, having the ap-
pearance of being cut off with a sharp instrument; the
body was cut in two completely at the waist line; the
bowels were gone, and both legs were severed about the
middle of the thighs. There was a cut in the left hand
and the wrist of that hand was fractured. There was
also a cut in the left thigh which apparently was inflicted
with the blade of a sharp axe. The dismembered parts
were found under a bluff, scattered about over a space
of twenty feet square or more. A witness who testified
as an expert, examined the remains and, according to
his testimony, deceased was a virgin, in good health, and
the hymen had been ruptured not more than a few hours
before death and too short a time for repair to begin;
that semen was found in the culdesac at the mouth of the

womb, showing sexual intercourse shortly before or after the murder was committed. Between 11 and 12 o'clock on the day of the murder an elderly lady, partially deaf, who was at work at a spring a few hundred yards from the place where the first blood was found, heard a single scream of distress in that direction.

The theory of the State is that the defendant dragged the deceased from her horse, or compelled her to dismount, and after perpetrating the crime of rape, murdered her.

The body was found about 9 o'clock on the night of the same day that the young lady disappeared. The next day a search of the locality was made, and the first evidences of blood were discovered 683 yards from deceased's home. At that place there was a tree-top which had been cut down in the road and the trunk of the tree removed; there was found among the leaves in this tree-top impressions as if a body had lain, and blood was scattered in two directions. The trail of the blood led from there a short distance to a point where a rock, weighing a hundred pounds, or more, was found, on which there appeared blood, and also a smaller rock on which there was blood and also hair which corresponded in color and otherwise with the hair of the dead girl. Near that spot the shoes and stockings of deceased were found secreted, and also a back comb used by deceased. From there the searchers traced the course of the murderer across Crooked Creek, a very small stream, where they detected tracks made by bare feet in the water and sand, and across this creek a short distance in the direction of an abandoned mine shaft they found the body as before described.

This was all within a few hundred yards of the home of deceased, in a sparsely settled locality.

Three days later there was found, among the leaves near the fallen tree top, a loaded revolver, which was identified as one owned by the defendant.

Defendant was arrested on Friday night, at the home of his father, after the murder was committed on

Thursday. The sheriff carried to the place a posse, which was assembled around the house when the officer went in to make the arrest. When the sheriff informed defendant's father that he had a warrant, the latter called to defendant, who, it appears, was in an upstairs room. About the time that his father's voice called to defendant, those on the outside heard a window raised in the room above and a hand protruded and dropped something, which was found to be a pair of men's socks, containing some sand and red pepper, a pod or pods of red pepper having been crushed up and placed in one of the socks. The sheriff had stated publicly that he was going to get bloodhounds, and it is the theory of the State that the defendant placed the pepper inside of his socks believing that it would prevent the hounds from following his track.

On Saturday morning those who were searching for evidences of the crime, found an axe near the woodpile at defendant's home, and blood was discovered in and about the eye of the axe. An expert chemist who analyzed the blood, declared it to be human blood. There also appeared on the handle, about the eye of the axe, a sliver upon which had caught what appeared to be a small thread or piece of cloth.

The testimony shows that the defendant was absent from home during the middle of the day; in fact, it is undisputed that he admitted to the sheriff of Carroll County, where he was confined in jail, that he left the house about 12 o'clock and went down on the creek. His brother testified that he saw him during the morning take this axe and go to the barn for the purpose of doing some work, and that he left home about 4 o'clock in the afternoon to go down to look after his fish traps on the creek.

There is also testimony to the effect that defendant had attempted to pay social attentions to deceased, but that his attentions had been rejected, and that he had expressed irritation and animosity towards the deceased on account of her conduct in rejecting his attentions.

The case against appellant is built up on circumstances, but we are of the opinion that the circumstances were sufficient to warrant the jury in finding that the defendant committed the crime. Learned counsel for defendant insist very earnestly that the evidence is not sufficient to sustain the conviction; but a careful consideration of all the circumstances compels the conclusion that the jury were correct in deciding that the defendant committed the crime.

The first assignment urged upon our attention as an error of the court in ruling upon the admissibility of testimony is that concerning the testimony of Alexander Davidson, the brother of defendant. He was called as a witness by the prosecuting attorney, and testified that he saw the deceased pass by his father's house on her return from Mrs. Briant's about 11 o'clock in the morning, and that some time during the morning he saw the defendant go towards the barn with an axe, and that he saw the defendant leave home to go down to the creek to set his traps about 4 o'clock in the afternoon. He was asked if he had not testified, before the grand jury and the coroner's jury, that he saw his brother, the defendant, go up towards the barn with the axe about half-past 12 o'clock; and he admitted that he had made that statement, but said that he was mistaken about it, and that his brother went up towards the barn with the axe earlier in the morning.

The defendant asked the court to let this statement only go to the jury for the purpose of contradicting the witness, and not as substantive evidence of the facts related in the contradictory statement.

The court overruled this request, and told the jury that they might consider the testimony for all purposes, for what it was worth.

Now, the ruling of the court was undoubtedly incorrect, for the testimony was not admissible for any other purpose than that of contradicting the witness; but we are of the opinion, considering the other testimony in the case, that the error was not prejudicial. This witness

testified that the defendant went towards the barn with his axe some time in the morning, and that he left home about 4 o'clock in the afternoon for the purpose of going down to the creek to set his traps. In his contradictory statement he said that his brother went towards the barn with the axe about half-past 12 o'clock. The fact which the State sought to establish was the time that defendant went off, and, according to the undisputed evidence, he left there about 1 o'clock. The sheriff of Carroll County testified that the defendant admitted to him that he left home about 1 o'clock and went down to the creek. Other witnesses corroborated this, and showed that the defendant was not at home in the middle of the day. Now, these are undisputed facts, and the contradictory statement of the witness, Alexander Davidson, was not important in fixing the time that defendant went away. It was testified by the witness that he went away and that he had an axe with him when he went off towards the barn, and the only question is as to the time that this occurred. The time is fixed by the testimony of the sheriff, and it is undisputed; so it is impossible to discover any prejudicial effect from the admission of the contradictory statements of this witness.

The next assignment relates to the refusal of the court to allow defendant's counsel to interrogate a witness introduced by the State, one Matlock, concerning his prejudice against the defendant.

It was, of course, competent for the defendant to show that fact in order to affect the credibility of the witness, and the court ought to have allowed the questions to be asked. *McIlroy* v. *State,* 100 Ark. 344.

The testimony of this witness related, however, to facts and circumstances which were thoroughly established by the testimony of several other witnesses and which are uncontradicted. All of the witnesses introduced on that subject, including Matlock, testified to discovering the evidences of the crime and the situation of different objects in the locality, and also to the fact of defendant dropping his socks out of the window. These facts were, as before stated, established beyond dispute

by testimony of other witnesses who were not impeached, and, therefore, must be taken as undisputed facts. It would not have aided defendant's case in the slightest for him to have broken down the testimony of Matlock by the method of impeachment which he attempted. No prejudice, therefore, resulted from this erroneous ruling of the court, and it does not call for a reversal of the case.

Objection is made to the introduction of testimony concerning the finding of the pistol, which was found near the scene of the killing on Sunday after the killing.

We think this testimony was competent, as the evidence tended to show that the pistol was owned by the defendant and that it was secreted under the leaves and brush near the scene of the killing. The State was entitled to have this fact go to the jury as a circumstance indicating defendant's presence there on that occasion.

A similar objection was made to the introduction of testimony concerning the finding of the axe two days after the killing, and the testimony as to the chemical analysis of the blood on the axe.

The State proved by the testimony of an expert that it was human blood on the axe, and, considering defendant's opportunities for having the axe in his possession and the fact that he was the last person seen with it, and, in fact, the only person who was seen with it in his possession on the day of the killing, it was competent for this testimony to go to the jury. The State adduced proof tending to show that the axe, from the time it was found at the woodpile on Saturday, was carefully preserved by the sheriff in the condition in which it was when found until delivered to the chemist.

Another objection was to the testimony of Miss Gertrude Barham, a sister of deceased, to the effect that defendant offered to escort her sister home from a party, but that after she refused to accept his attentions he used some language about her which the witness expressed a desire not to repeat. After relating the incident, she was asked to repeat the language which defend-

ant used, and her reply was, "I rather not." Counsel
for the State then asked why, and an objection was inter-
posed, which was overruled, and she gave as a reason
that the language was of such a nature that she (wit-
ness) did not want to repeat it.

Now, it would have been improper for the court to
refuse to require the witness to state what the language
was, but counsel for the defendant did not ask the court
to require the witness to state what the language was.
The manner in which the exception appears in the record
shows that they were objecting to any statement on the
subject at all. Doubtless, if it had been suggested to the
court, the witness would have been required to state what
the language was.

We think that under those circumstances the defend-
ant is not in any position to ask for a reversal because
the witness was allowed to state that she preferred not
to repeat the language.

There are two or three other exceptions to the rul-
ings of the court in regard to admissibility of testimony;
but we do not find them to be of sufficient importance to
call for discussion.

Our conclusion is, that the court committed no preju-
dicial error in that regard.

The record shows that during the argument, the
prosecuting attorney referred to the testimony of Miss
Barham and used this language:

"You have a right to consider this conversation with
Miss Barham in presence of her sister, gentlemen of the
jury, so unexplained by any one and unexplained and
undenied by any one, and I call on them now to explain
this conversation, if untrue."

It is urged that this amounted to a comment on the
failure of the defendant to testify.

We do not think that that is the proper construction
to place on the language of the prosecuting attorney. It
is not a comment or criticism on the defendant's failure
to testify in his own behalf, but was the expression of the
opinion of counsel that the testimony had not been re-

butted and it should be accepted as true. *Davis* v. *State,* 96 Ark. 7; *Culbreath* v. *State,* 96 Ark. 177.

The objections pointed out by counsel to the instructions of the court are not of sufficient importance to discuss.

Upon an examination of the whole record, we are convinced that the case was fairly tried below and that the evidence was sufficient to sustain the conviction. The judgment is, therefore, affirmed.

WOOD and SMITH, JJ., dissent.

SMITH, J., (dissenting). At the common law the presence of the defendant was required at every substantial step during the progress of the trial, and the right to be present is still as universally recognized, as the necessity for the defendant's personal presence formerly was. But in the development of our criminal procedure this rule has been much relaxed until now in this State, and in many others, the defendant's presence may be waived throughout the entire trial of a charge not a felony. But we have not heretofore gone that far in the trial of felonies, although such must be the effect of the opinion of the majority of the court in this case. If the defendant's presence may be waived during the receipt of the verdict, why may it not be waived during the progress of any other part of the trial, and if during a portion of the trial, why not during all of it? Trials by proxies may result, and who can tell the possibilities of that situation?

It was once unquestionably the law of this State that a defendant's presence was required during the progress of his trial upon a felony charge, and that a verdict could not be received in his absence. That very point had been so decided.

In the case of *Sneed* v. *State,* 5 Ark. 431, the defendant was on bail when the verdict was received. At the next term of the court the attorney for the State ordered the defendant into custody and moved that the court proceed to render judgment on the verdict returned at the previous term of the court. It was there said: "The

offense with which the prisoner stood charged was lar-
ceny; and this is felony by the common law. In such
cases, by our revised statutes, page 307, section 154, no
indictment for a felony shall be tried, unless the defend-
ant be personally present during the trial. This was
only declaratory, and an affirmance of the common law,
which would not allow any proceeding affecting life or
liberty, to be had in the absence of the prisoner, and
when any step was to be taken in the cause, the prisoner
was to be present personally, lest in so important a mat-
ter he should be prejudiced. This care of the law for
his safety was extended through the whole trial, from
his arraignment to his final conviction or acquittal. No
verdict, therefore, could be properly rendered in court in
the prisoner's absence, because he was not there to make
objection to, or avail himself of them.

The authorities are express upon this point. 1 Chit.
Cr. Law, ...; 1 Tenn. Rep. 434; 1 Breese Rep. 109; 1
Wend. 91, and where the defendant is out on bail, the
principle is the same; the law not regarding the cause of
his absence, as whether he is away voluntarily or against
his will. *State* v. *Hurlburt,* 1 Root, Conn. Rep., 90. ''The
verdict being taken in his absence, was void, consequently
the court erred in entering judgment of conviction upon
the finding, but should have ordered a new trial to be
had. Judgment reversed and new trial ordered.''

The Constitution of 1836 was in force at the time
of that trial and it contained practically the same pro-
vision as our present Constitution in regard to the right
of a defendant to be present at his trial. ''That in all
criminal prosecutions the accused hath a right to be
heard by himself and counsel.'' Section 11, article 2,
Constitution, 1836. And the statute then in force and
referred to in the opinion is the statute we now have
except that it has been amended to permit a trial to con-
tinue, after it has commenced, where the defendant es-
capes, or, if on bail, absents himself; in either of which
cases the trial may be stopped, or may progress to a
verdict at the discretion of the prosecuting attorney.

Kirby's Digest, § 2339. Neither of these two exceptions, excusing the necessity for the defendant's presence, need be considered here for they do not apply to the facts of this case. The constitutionality of this section was attacked upon the ground that under no circumstances could a trial for felony progress in the absence of the defendant. And several courts of the highest authority have so declared the law to be.

But this court upheld the act in an opinion by Justice SANDELS in the case of *Gore* v. *State,* 52 Ark. 285, and among other things it was there said: ''It has been uniformly held by this court that a defendant charged with felony has a right to be present at every stage of his trial. Sections 8 and 10 of article 2 of the Constitution have been construed to guarantee him that right. And it has been often held that a defendant can not waive his constitutional rights by agreement. It is now to be determined whether the constitutional guaranty that the defendant shall be confronted with the witnesses against him remains where he, pending a trial, absconds and refuses to be confronted. Neither direct authority nor analogy are lacking in the construction of this guaranty.'' And the statute was upheld and the discussion of the constitutionality concluded with the statement that while the Constitution guarantees the defendant the right to be present, this guaranty is not intended to include the right to abscond and then complain of his own absence. But before this statute and before the decision in the Gore case, *supra,* Justice SCOTT, speaking for this court in *Cole* v. *State,* 10 Ark. 318, said: ''And the authorities are equally numerous, pointed and respectable, that in all cases of treason and felony, the verdict, whatever may be its effect, must be delivered in the presence of the defendant in open court, and can not be either privily given, or promulgated, while he is absent, and if he does not appear the jury may be discharged without rendering it (1 Ch. Cr. Law, 636; 1 Breese, 109; Overton's Tenn. Rep. 435; *The People* v. *Perkins,* 1 Wend. 91), and the defendant being out on bail does not alter the case. *State* v. *Hulbert,* 1 Root, 91; *Sneed* v. *State,* 5 Ark. 432.''

"Although many of the ancient forms on trials have fallen into disuse in modern times, those touching the presence of the defendant, both at the time of the rendering of the verdict and judgment in treason and felonies, including, as they do, substantial rights—that of the right to poll the jury, the making of any proper objection to the recording of the verdict, and of answering further why judgment and sentence should not be pronounced—and designed, as they are, to throw additional safeguards around the proper administration of criminal justice, in having the defendant and those who are to pass upon his case and pronounce the sentence of the law face to face, are not to be dispensed with."

The same subject, that of the necessity of the defendant's presence throughout his trial, was again discussed in the case of *Sweeden* v. *State,* 19 Ark. 205, and it was there said: "We have said that it was absolutely necessary that the appellant should have been present 'during the trial' in the court below. The phrase 'during the trial' used in the section of law we have quoted, means that it is necessary that the defendant should be present in court at each and every time, and on all occasions, at which, and when any substantial step is taken by the court, in his cause, after the indictment is presented by the grand jury to the court, up to, and until final judgment (including that also) is pronounced in his cause, by the court, and even afterwards, if any subsequent step should be taken by his counsel. But this particularity in reference to the presence of the defendant, only relates to the trial of felonies, and not to offenses less than felonies, as the act itself expressly declares. And this seems to be consistent with the law as it existed before the act in question was passed as abundantly appears by the authorities and principles collated and stated in *Cole* v. *The State,* 5 Eng. Rep. 318, and *Sneed* v. *The State,* 5 Ark. 431." The statute referred to reads as follows: "No indictment for a felony shall be tried, unless the defendant be personally present during the trial; nor shall any person indicted for an

offense less than felony be tried, unless he be present at the trial, either personally or by his counsel."

In the case of *Bond* v. *State*, 63 Ark. 504, a reversal was sought upon the ground that the defendant was absent when the verdict was returned, and while that case was disposed of upon the presumption of the defendant's presence, yet the opinion of the court and the dissenting opinion of Chief Justice BUNN leave no doubt the case would have been reversed but for this presumption, for the opinion of the majority concludes with this statement: "It would have been an easy matter, if the defendant was prevented from being present, by confinement in jail or otherwise, at the time the verdict was returned into court, for him to have shown the fact, and embodied the evidence in his bill of exceptions. This he did not do, and we must presume that he was voluntarily absent, or that he was present when the verdict was returned." And the dissenting opinion concludes with the statement that "He was presumptively present; and if he was not actually present, he should affirmatively show he was absent, and not voluntarily absent." To substantially the same effect are the cases of *Osborn* v. *State*, 24 Ark. 629; *Bearden* v. *State*, 44 Ark. 332; *Benton* v. *State*, 30 Ark. 328; *Owens* v. *State*, 38 Ark. 512; *Bennett* v. *State*, 62 Ark. 516; *Warren* v. *State*, 19 Ark. 214; *Brown* v. *State*, 24 Ark. 620, and an indefinite number of cases to the same effect are to be found in the reports of other States.

But it is said that this right can be waived and was waived by defendant's counsel and that the presumption is that his counsel were authorized so to do. An examination of many cases leads us to the conclusion that the great weight of authority is that the defendant himself can not waive his presence during a trial upon a felony charge.

The case of *Warren* v. *State*, 19 Ark. 214, is reported in 68 Am. Dec. 214, and there is an extensive note with many cases cited which we think fully sustain our position.

The case of *Fight* v. *State,* 7 Ohio, 180, was an Ohio case, and is reported and annotated in 28 Am. Dec. 629, and many cases are cited to support the editor's note that "the accused must be present during the entire trial, or at least up to and including the rendition of the verdict, and no valid judgment can be predicated upon a verdict received in his absence, and that any waiver of this right must be the act of the accused himself and not that of his counsel." Other cases to the same effect are collected in the note to *State* v. *Keeley,* 97 N. C. 404; 2 Am. St. Rep. 299; *Hill* v. *State,* 86 Am. Dec. 736.

In Bishop's New Criminal Procedure, § 273, the rule is announced that "except as already appearing, the doctrine is that in felony or treason the accused must be present at every material stage in the trial, at the swearing of the witnesses, and the giving in of the evidence, the charge to the jury, special instructions during its deliberations, the rendition of the verdict—else there can be no valid judgment against him. It is not sufficient that his counsel are present and not objecting." And he cites many cases to support the text.

Among other courts which hold that not even the defendant himself can waive his presence at a trial upon a felony charge is the Supreme Court of the United States. *Hopt* v. *People,* 110 U. S. 574; *Lewis* v. *United States,* 146 U. S. 370; *Schwab* v. *Berggren,* 143 U. S. 442.

The law of this subject is fully reviewed in a recent opinion of the Supreme Court of Mississippi in the case of *Sherrod* v. *State of Mississippi,* 47 So. 554, 20 L. R. A. (N. S.), 509, and the following conclusions were announced by Whitfield, C. J.

First. In the trial of all felonies, not capital, where the defendant is on bond, and has been present throughout the delivery of the testimony, up to the rendition of the verdict, but is absent at the rendition of the verdict, voluntarily, he will not be permitted to avail himself of his own wrong in being thus voluntarily absent, but the verdict may be properly received in his absence. In other words, he may waive the right to be present when

the verdict is received, which is not, as seems popularly supposed, a constitutional right, though a very sacred right secured by the common law as well as by statute.

Second. Whenever the charge is a capital one, the courts have held uniformly, *in favorem vitae,* that the defendant can not waive his right to be present, and that whether he be in jail, subject to the power of the court to produce him, or on bond, it is fatal error to receive the verdict in his absence.

Third. Even in felonies, not capital, if the defendant be in jail when the verdict is received, it is fatal error.

Fourth. In cases not capital, the right of the defendant, where he is on bond, to waive his own presence when the verdict is received, is strictly his personal right, and no such waiver can be exercised for him by his own counsel.

No distinction can be made under the Constitution and laws of this State between a capital and other felonies. But an examination of many cases construing the constitutions and laws of other States leads to the conclusion that a proper interpretation of the Constitution and laws of this State would not permit even the defendant himself to waive his presence upon a trial for a felony charge. And we have found no case which permits this right to be waived, where it can be waived at all, by any one except the defendant himself. To hold that it could be would make our Constitution read that the defendant has the right "to be heard by himself *or* his counsel," when in fact it reads that his right is "to be heard by himself *and* his counsel." Art. 2, § 10, Constitution.

The statute is, "If the indictment be for a felony the defendant must be present during the trial. If he escapes from custody after the trial has commenced, or, if on bail, shall absent himself during the trial, the trial may be either stopped, or progress to a verdict at the discretion of the prosecuting attorney, but judgment shall not be rendered until the presence of the defendant

is obtained.'' It is thus seen that the presence of the defendant upon trial for a felony is mandatory, except that the Legislature has provided that if the defendant escapes, or, while upon bail, absents himself, the trial may proceed. These exceptions are both acts wholly within the control of the defendant, and are the only exceptions made, and the court should not add another.

It is not required of the defendant that he show he was prejudiced by any substantial step taken in his trial during his absence, for the probability that he might have been prejudiced by any step taken, or any order made, is all that need be shown to reverse a judgment of conviction, where no affirmative showing is made that no prejudice did result or could have resulted from his absence. *Mabry* v. *State,* 50 Ark. 492; *Bearden* v. *State,* 44 Ark. 331; *Polk* v. *State,* 45 Ark. 165.

Yet in this case a verdict was returned which did not fix the degree of the homicide and this court has several times decided that a verdict upon an indictment for murder which does not find the degree of murder is so defective that no judgment can be entered upon it. *Lancaster* v. *State,* 71 Ark. 100; *Porter* v. *State,* 57 Ark. 267. And when this void verdict was received the defendant was being spirited away to another county. With this significant fact before them, the probabilities were not lessened, when the jury retired to prepare a valid verdict, that the verdict thereafter returned would authorize the imposition of the death sentence.

For the error indicated a new trial should be granted.

Justice WOOD concurs.