DUNHAM *v.* STATE.

4358                                    181 S. W. 2d 242

Opinion delivered June 19, 1944.

*George M. Booth,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

McHANEY, J.   Appellant was convicted of involuntary manslaughter on a charge of murder in the first degree for the shooting and killing of her sister, and sentenced to a year's imprisonment.

She has appealed from that judgment and the only ground urged for a reversal is that the court erred in admitting in evidence, over her objections and exceptions, the voluntary statement made by her at coroner's inquest and which statement was reduced to writing by the deputy prosecuting attorney in the presence of the coroner and the jury impaneled by him, and she signed same. She was sworn as a witness and before testifying she was told that she was not required to testify and that any statement she made would be used against her. She

was 16 years old at the time and was brought to the inquest by the sheriff. The statement, dated January 11, 1943, follows: ''My name is Alice Dunham. I am a sister to Lois Creel. Last night, or late yesterday afternoon, my husband, my sister, Lois, and my father and mother were at my parents' home. Lois and I began fussing. She sat down beside my husband and said that he was good looking and that she would like to take him out. I said, 'Hell, yes, he is good looking,' and that I was going to take her husband out. I then threw a rouge box at her and she threw it back at me. My husband thought Lois and I were mad at one another. He told us to quit fussing. About 6:00 p. m., my husband, Lois and I went to town and my husband and I ate supper at Zeno's Cafe. We all then went to the show. Lois sat in front of us. My husband and I left the show before Lois did. We went to Lewallen's Cafe, and were drinking Coca-Cola. Lois came in and started talking with some soldiers she knew. As soon as we finished drinking, we left without saying anything to Lois. My husband took me home in a taxi and then left for camp. In a little while Lois came and wanted to sleep with me. I told her at first she couldn't. My father then told Lois to sleep with him and Mamma. She slept with them. I did not get up at all this morning until about 10:00 or 10:30. Lois was not up at this time. She got up about 11:00. When she got up we started going on at one another. We were cursing each other. She called me a damned old ............ I called her Hitler and things like that. We were always talking to each other that way, even when we were in a good humor. This morning Lois and I got pretty loud with each other, calling one another bad names. I often call people, including my husband, 'You crazy son-of-bitch' or 'You crazy bastard.' This morning, after Lois got up, she and I were going on at one another. She was standing on one side of the stove and I was on the other side of the stove. I got the gun down and pulled the hammer back. I did not shoot immediately. We were calling each other bad names. Before Lois got up, mamma dropped something on the floor, the poker, I think. Lois said she wanted to sleep—that she couldn't sleep with a racket going on.

I then kicked something and made a noise. When I did this, Lois said, 'Oh, you fool.' I then said something back to her. Lois then got up. We started spatting back and forth at each other across the stove. She reached over across the stove towards me. I do not know whether she tried to slap me or not. I got the shotgun and sat down with the gun across my lap. Lois was still standing on the other side of the stove. I got up and pulled the hammer back and pointed the gun at her. I think I had the hammer pulled back while I was sitting down. When I pointed the gun toward Lois and she was facing me, I pulled the trigger. The gun fired and Lois fell dead.

"Lois got married last December 27th. She came home January 10th, about 4:00 p.m., for the first time since she married.

"I have made the foregoing statement of my own free will and I hereby sign same after being warned that any statement made by me might be held against me, and my statement is set out on the preceding six pages and this one."

It is earnestly insisted by counsel for appellant that the admission in evidence of this statement, without which a conviction could not have been obtained, was error. It is said that its admission is in violation of the latter part of subdivision (c) of § 8, art. 2, of the constitution of this state, providing: ". . . nor shall any person be compelled, in any criminal case, to be a witness against himself; . . ." But the undisputed proof is that she was not compelled to be a witness against herself. When called as a witness before the inquest she was warned that she did not have to testify and that, if she did, it would be used against her. This was not an invasion of her constitutional rights. Voluntary statements of the defendant before the coroner's inquest were held to be admissible in evidence on his trial in *Tiner* v. *State*, 110 Ark. 251, 161 S. W. 195, and again in the same case, 115 Ark. 494, 172 S. W. 1010, as a declaration against interest, but held such statements admissible on behalf of the State whether against interest or not. See 35 C. J. 629. In 22 C. J. S., Criminal Law, § 733, p. 1255, the general

rule is thus stated: "Provided they were made voluntarily, admissions by accused at a coroner's inquest may be received against him. The fact that accused was subpoenaed, or the equivalent thereof, to appear at the coroner's inquest does not render his statements thereat inadmissible against him on a subsequent trial, if such statements were, in fact, voluntarily made."

Appellant quotes and relies on the provisions of §§ 3956 and 3957 of Pope's Digest to exclude the statement, but we think they have no application here. The former relates to cases where two or more persons are jointly concerned in the commission of any crime or misdemeanor, either may be sworn as a witness in relation thereto, but the testimony so obtained cannot be used against the witness in a prosecution against him for the same offense. This statute has no application, as appellant is not jointly charged with any other person and she was not called as a witness against any other person. The latter (3957) permits the accused to be a witness in his own behalf, at his own request, but not otherwise, and the fact that he fails to make the request shall create no presumption against him. This statute changed the rule formerly existing which precluded the accused from testifying for himself. Here, appellant did not avail herself of the privilege granted by this statute, but her failure to do so creates no presumption against her.

She was convicted on the voluntary statement made by her at the coroner's inquest, which, as we have already stated, was admissible, and the judgment is accordingly affirmed.