WALTON *v.* STATE.

5001                                              350 S. W. 2d 302

Opinion delivered October 16, 1961.

[Rehearing denied November 13, 1961.]

*Cecil E. Johnson, Jr.* and *John C. Finley, Jr.,* for appellant.

*J. Frank Holt,* Attorney General, by *Thorp Thomas,* Asst. Attorney General, for appellee.

GEORGE ROSE SMITH, J. An information was filed against the appellant, Edward Walton, Jr., charging him with murder committed in the perpetration of burglary. He originally pleaded guilty and was sentenced to death, but that conviction was set aside on appeal. *Walton* v. *State,* 232 Ark. 86, 334 S. W. 2d 657. Walton then changed his plea to not guilty. Upon a trial on the merits he was found guilty of first degree murder and was again sentenced to death. A number of points are urged for a reversal of the judgment.

I. We find the evidence to be amply sufficient to support the verdict. Chester Stewart's filling station in Ashdown had been broken into at night several times over a period of three months. In an effort to catch the burglar the sheriff posted the decedent, Roy Hallman (or Hollman), as an armed nightwatchman on duty inside the station. Four days later, on the morning of

June 20, 1959, it was discovered that the station had again been broken into and that Hallman had been brutally beaten and fatally shot in the back. Hallman's pistol and wallet were missing, and the cash register in the station had been rifled.

Later that same morning Walton, a man of twenty-seven, was arrested in Texarkana when he tried to sell a pistol to the proprietor of a liquor store. The arresting officers recovered a pair of bloodstained trousers that Walton had left at a nearby residence earlier that day. The murdered man's wallet and papers were found in a pocket in the trousers. The pistol that Walton had was identified as the one furnished by the sheriff to Hallman. The state proved that this weapon had fired the bullet found in Hallman's body.

Walton elected to testify at the trial. He admitted that he had entered the filling station and scuffled with Hallman and that a gun had gone off. He testified, however, that he had been so drunk and things had happened so quickly that he could not remember the details.

The state introduced Walton's signed confession. In this narrative Walton related the events in detail and with apparent clarity of memory. He said that he had broken into the station and was at the cash register when Hallman, whom he had not seen, ordered him to put up his hands. Hallman was holding a pistol, but Walton could see that he was shaking with fright. While carrying on a conversation Walton managed to get close enough to grab at the gun and grapple with Hallman. During the struggle Walton seized a tire tool and hit Hallman in the head two or three times. While the two men were fighting for the gun it went off and fatally wounded Hallman. After the shot Walton fled, but in a few minutes he changed his mind and returned to the station. There he took the pistol, the dead man's wallet, and the money in the cash register. He then got in the service station's pickup truck and drove to Texarkana, where he was arrested several hours later.

With much of the evidence undisputed a principal question for the jury was whether Walton was so intoxicated as to be unable to entertain the intent to commit burglary and to engage in the struggle that resulted in Hallman's death. This issue was submitted to the jury under instructions that we find to be correct. It was shown without contradiction that Walton was sufficiently alert to enter the filling station, overpower his victim, take the gun, wallet, and money, and drive a truck to Texarkana. In view of these facts the jury were not required to believe Walton's assertion that he had been too drunk to know what he was doing. It is true that Walton was intoxicated later in the day when he was arrested, but the undisputed proof shows that he bought beer and whiskey and drank heavily after reaching Texarkana.

II. The appellant asked for a change of venue, on the ground that he could not receive a fair trial in Little River county. On this issue the proof offered by the accused and by the state was in conflict. It was for the trial court to say whether the allegations of prejudice were well founded. *Leggett* v. *State,* 227 Ark. 393, 299 S. W. 2d 59. We do not find that the court abused its discretion in denying the motion.

III. Walton, a Negro, challenged the jury panel with an assertion that members of his race had been systematically excluded. There is no proof whatever to sustain this charge with respect to this particular panel. It is shown without dispute that the jury commissioners were instructed to select the panel without regard to race, creed, or color. Twelve Negroes were named upon a panel of about sixty-six persons, which indicates that a fair cross-section of the population was represented.

It happened that the twelve Negro veniremen were excused for cause, as they were all opposed to capital punishment. Walton's present contention is that the court should have summoned more Negro veniremen so that the race would be represented upon the jury as finally selected. This contention is not sound. All that

the accused is entitled to demand is that the panel be fairly chosen, without racial discrimination. He is not entitled as a matter of right to the presence of Negroes upon the petit jury that hears the case. *Akins* v. *Texas,* 325 U. S. 398. Where the initial panel is fairly selected, as in the case at bar, it has been held that the accused is not discriminated against merely because the members of his race are peremptorily challenged by the prosecution. *Haraway* v. *State,* 203 Ark. 912, 159 S. W. 2d 933, cert. den. 317 U. S. 648; *Hall* v. *U. S.,* App. D. C., 168 F. 2d 161, 4 A. L. R. 2d 1193, cert. den. 334 U. S. 853; *People* v. *Roxborough,* 307 Mich. 575, 12 N. W. 2d 466, cert. den. 323 U. S. 749. The state's position here is even stronger than in the cases cited, for in the court below the veniremen were properly excused for cause.

IV.   After one of the jurors had been accepted by both sides it was discovered that he had signed an affidavit expressing the opinion that Walton could not get a fair trial in the county. The prosecution was then permitted to excuse the juror by a peremptory challenge. At that point the selection of the jury had not been completed, and of course the jurors had not been sworn. There was no error, especially as it was not shown that the defense had exhausted its peremptory challenges. *Nail* v. *State,* 231 Ark. 70, 328 S. W. 2d 836.

V.   Although Walton has never directly denied the truth of his confession he insists that it should have been excluded as involuntary. The jury were justified in rejecting this contention, for the decided weight of the evidence supports the view that the confession was admissible. When Walton was arrested the officers thought that he was too intoxicated to be questioned. That afternoon or evening, however, he was confronted with the overwhelming evidence against him, and, according to the officers, he readily admitted his guilt. There is no suggestion that he was questioned for any length of time. All the officers present say that he was not mistreated in any way, and, in view of the almost conclusive proof that was already available, their statements are plainly credible. The confession was not reduced to writ-

ing until the following day, when a stenographer could be present.

The jury may well have been unimpressed by Walton's assertion that he was abused by the officers. He said that he was taken to the basement of the courthouse, where the officers handcuffed his hands behind his back and beat him with a strap. He was unable to describe the basement, and other proof shows that the basement consists only of a hall and offices occupied by public employees. Walton was unable to positively identify the officer who allegedly mistreated him. He exhibited a scar on his back, but the state offered proof to show that the scar was the result of a fight some days earlier, and in any event the wound could hardly have been inflicted if Walton had been handcuffed in the manner he describes.

Finally, when Walton was arraigned on June 22 he stated in open court that his confession had been voluntary and freely given; the officers, he said, "were very nice." This prior testimony was objected to, but it was plainly competent. *Ellis* v. *State,* 144 Ark. 504, 222 S. W. 1058; *Dunham* v. *State,* 207 Ark. 472, 181 S. W. 2d 242; Wharton's Criminal Evidence (12th Ed.), § 735. Upon the record as a whole we are firmly convinced that the issue of the voluntary nature of the confession was correctly submitted to the jury.

VI. Over the defendant's objection the court permitted the jury to view the scene of the murder. It is contended that the conditions on the day of trial were not exactly the same as they were on the night of the murder, since a few things had been moved, such as an oil rack and a five-gallon can. The jury were told of the changes, however, and we are unable to see how the accused could have been prejudiced in any manner by the slight differences in the situation.

The appellant also insists that he should have been permitted to accompany the jury instead of remaining in the judge's chambers with his counsel, where a preliminary hearing upon the voluntary character of the

confession was held while the members of the jury were gone. If the appellant or his counsel had requested that he be permitted to accompany the jury no doubt the court would have granted the request. No such request was made, however, and consequently the right to be present at the view was waived. *Davidson* v. *State,* 108 Ark. 191, 158 S. W. 1103, Ann. Cas. 1915B, 436; *Whitley* v. *State,* 114 Ark. 243, 169 S. W. 952.

VII. After the members of the jury had retired they sent word to the trial judge that they would like to ask a question. The judge, the attorneys, and the court reporter all went to the jury room, where a juror asked "if a life sentence is fixed on this boy, is there any guarantee that it will be a natural life sentence? Will he be there for the rest of his life, or is there a possibility of parole?"

The judge replied: "That is something neither you nor I have any control over whatsoever. We must all recognize that another branch of our government has pardoning power. I think you should feel, as far as the jury is concerned, that your verdict spoke the truth." Another question and answer were to the same effect.

Back in the courtroom the judge's remarks were objected to by defense counsel. This objection was not well founded. In two recent cases where the death sentence was imposed we held that the court did not err, in a similar situation, in correctly telling the jury that the executive department of the government has the power to grant clemency. *Scarber* v. *State,* 226 Ark. 503, 291 S. W. 2d 241; *Moore* v. *State,* 231 Ark. 672, 331 S. W. 2d 841. In the case at bar the court in effect sustained the objection by later instructing the jury not to consider the statements previously made by the court. This additional admonition was unnecessary, as the court had not erred; but of course the appellant cannot now complain of action which he himself requested and to which he did not object.

We have examined all the other objections in the record and find them to be without merit. The case was

ably defended by counsel appointed by the court. The proof of the appellant's guilt was overwhelming, however, and we find no basis whatever for holding that he did not receive a fair trial.

Affirmed.