WALTON *v.* STATE.

4969                                        334 S. W. 2d 657

Opinion delivered April 18, 1960.

*W. Harold Flowers,* for appellant.

*Bruce Bennett,* Atty. General by *Ancil M. Reed,* Asst. Attorney General, for appellee.

JIM JOHNSON, Associate Justice. The appellant was charged with the crime of murder in the first degree, and, when arraigned, entered his plea of guilty. A jury was impaneled and after the conclusion of the evidence the court told the jury that:

"The law provides that in cases of this kind where the accused confesses his guilt, the Court shall impanel a jury and examine testimony, and the punishment for the crime shall be found by such jury."

Having defined the term "murder in the first degree" the Court instructed the jury as follows relative to the issue here considered:

"In this case the defendant, Edward Walton, Jr., has entered a plea of guilty. In other words, he has confessed his guilt. The only question for the Jury to decide is the punishment to be imposed. Under the Information filed against the defendant, if you believe the evidence justifies it, it is competent for you to fix

his punishment at death in the electric chair, or at life imprisonment in the Arkansas State Penitentiary.

"You are instructed that ordinarily a defendant starts out in the beginning of the trial with the presumption of innocence in his favor, which presumption follows him throughout the trial, or until the evidence convinces the Jury of his guilt beyond a reasonable doubt. However, in this case no presumption of innocence attaches to this defendant, Edward Walton, Jr., since he has entered a plea of guilty, and has admitted his guilt in open court. The only question for you to decide is what his punishment should be. * * *

"You will consider, then, only the extent of punishment — death or life imprisonment . . ."

After the jury had been so instructed, and upon conclusion of the closing arguments, the Court thereupon addressed the Jury as follows:

"Members of the Jury, when you retire to deliberate, you will take with you for your consideration two forms of verdicts, one of which it will be your duty to approve under the law and the evidence. One of those forms reads as follows: 'We, the Jury, find the defendant, Edward Walton, Jr., guilty of Murder in the First Degree, and fix his punishment at death in the electric chair.' In the event you return that verdict, the punishment is death in the electric chair, as it explains itself.

"Another form of verdict will be: 'We, the Jury, find the defendant, Edward Walton, Jr., guilty of Murder in the First Degree and fix his punishment at life imprisonment.' That form also is self explanatory . . ."

The jury received the verdict forms and retired for their deliberation. Later, on the same day, the jury returned into court a verdict finding the defendant guilty of Murder in the First Degree, fixed his punishment at death in the electric chair, and the court entered judgment in accordance therewith. From such verdict and judgment comes this appeal.

The brief and argument filed on behalf of appellant is as follows:

"Appellant, Edward Walton, Jr., a Negro, was convicted of the murder of Roy T. Hallman, 61 year old white man, and sentenced to death.

"Appellant entered a plea of guilty.

"Point of Reliance for Reversal:

"Appellant contends that the judgment of the Court wherein the sentence of death in the electric chair was imposed is too harsh and severe.

"Appellant voluntarily entered a plea of guilty to the charge of murder in the first degree. The death sentence was imposed. Appellant's counsel made a futile effort to win for him a sentence of life imprisonment.

"Appellant, enjoying the benefit of Arkansas law, now rests his fate in the hands of this Honorable Court, whose duty it is under law to examine all matters pertaining to the trial.

"Appellant, while believing that a fair trial was accorded him for an unnecessary killing, prays the Court to invoke the Divine law, and commute the sentence of death to life imprisonment.

"Respectfully submitted,
(s) W. Harold Flowers,
*Attorney for Appellant.*"

After a careful review of the record we cannot escape the conclusion that a brutal murder has been committed by appellant, therefore we find no merit in the lone point relied on for reversal. Appellant raised only two objections in the entire trial. The first was sustained and the second contained no merit. There was no motion for a new trial. The verdict and judgment not only should, but would be affirmed except for our obligation to examine the record for error on its face.

On December 17, 1838, shortly after the admission of this state into the Union, an act was passed, which

has since been unchanged, and now appears as § 43-2152, Ark. Stats. It reads as follows:

"The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree or crime shall be found by such jury."

It was under the authority of this statute that the court attempted to proceed in this case. At the conclusion of the evidence offered by the State, there being no evidence for the defendant, the court charged and instructed the jury as heretofore quoted. From such charge and instruction the jury was precluded from determining, finding or ascertaining the degree of the murder. The charge and instructions left the jury no choice but to find the appellant guilty of first degree murder. The jury was told: "You will consider then, only the extent of punishment — death or life imprisonment." In *Porter* v. *State,* 57 Ark. 267, 21 S. W. 467, Chief Justice Cockrill, speaking for the Court, said: "The object of the statute was to make sure that the accused should not be subjected to capital punishment unless the jury specially find that he is guilty of the first degree of murder." The Court restated this rule in *Lancaster* v. *State,* 71 Ark. 100, 71 S. W. 251 as follows: "The statute, it will be seen, requires that there should be a special finding of the degree of murder by a jury, even though the defendant confesses his guilt."

And Justice Hart, speaking for the Court in *Banks* v. *State,* 143 Ark. 154, 219 S. W. 1015, said: "The statute expressly requires the jury to ascertain the degree in all cases of murder." Also see: *Thompson* v. *State,* 26 Ark. 323; *Allen* v. *State,* 26 Ark. 333; *Trammell* v. *State,* 26 Ark. 534; *Neville* v. *State,* 26 Ark. 614; *Simpson* v. *State,* 56 Ark. 8, 19 S. W. 99; *Porter* v. *State,* 57 Ark. 267, 21 S. W. 467; *Carpenter* v. *State,* 58 Ark. 233, 24 S. W. 247; *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900; *Hembree* v. *State,* 68 Ark. 621, 58 S. W. 350; *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849; *Wells* v.

*State,* 193 Ark. 1092, 104 S. W. 2d 451; *Jones* v. *State,* 204 Ark. 61, 161 S. W. 2d 173; and for a case almost on all fours with the case at bar see: *Ray* v. *State,* 194 Ark. 1155, 109 S. W. 2d 954.

In the *Ray* case, *supra,* which opinion was not officially reported in the Arkansas reports, which within itself is an indication of how thoroughly the question is considered settled by this Court, the Court said:

"The appellant relies on section 3205, Crawford & Moses' Digest, section 4041, Pope's Digest (§ 43-2152 Ark. Stats.) as construed and applied by this court and especially in the recent case of *Wells* v. *State,* [193 Ark. 1092,] 104 S. W. (2d) 451. Appellee calls attention to the difference between the verdict returned in the Wells Case and that in the instant case. In the Wells case, the verdict was, 'We, the jury, find the defendant guilty and fix his punishment at death,' whereas, in the case at bar, the verdict is, 'We, the Jury, find the defendant, Hollis Ray, guilty of murder in the first degree as charged in the information and fix his punishment at death by electrocution.'

"In the Wells case, this court held the verdict was so defective as to call for a reversal. In the case at bar, however, it is pointed out that the verdict does not contain the defect of that considered in the Wells case. We went further than that. In that case, as in this, the trial court charged the jury, in effect — although not in positive terms — to find the defendant guilty of murder in the first degree and left for its consideration only the extent of the punishment to be inflicted. We held that the direction of the trial court in that case was error, and, while the case was reversed because of error in the instruction and defectiveness of the verdict, it is clearly indicated that either was sufficient to demand a reversal.

In all of the cases citing the section of the law above quoted, its provisions have been uniformly held to be mandatory. We may not ignore the statute by saying that it is technical or highly technical. Its terms are imperative and have become a fixed part of our criminal jurisprudence. It is the duty of courts to enforce legis-

lative provisions when the legislature acts within constitutional limits; and a departure by the courts from imperative rules established by the legislature for the protection of all in order to meet the exigencies of particular cases is an evil not to be thought of, let alone to be acted upon. It matters not that the errors in the instructions and charge have not been raised by appellant on appeal; *Hembree* v. *State, supra, Wells* v. *State, supra*; or that appellant in his brief concedes that he was accorded a fair trial; the judgment, for the errors indicated, must be reversed and the cause remanded for a new trial.