FRANKLIN DAVID BOSNICK, JR. *v.*
THE STATE OF ARKANSAS

5485                              455 S. W. 2d 688

Opinion delivered June 29, 1970

*Harold Sharpe,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant Franklin David Bosnick, Jr., was found guilty of first degree murder and sentenced to death. For reversal he relies upon the following points:

1. The lower court erred in its refusal to instruct the jury on second degree murder and the other degrees of homicide.

2. The information charging appellant with first degree murder was fatally defective and will not support a conviction of the crime of first degree murder with the evidence presented.

3. The lower court erred in instructing the jury on Ark. Stat. Ann. § 41-2246 (Repl. 1964), said statute being violative of the 14th Amendment to the U. S. Constitution.

4. The lower court erred in allowing testimony that indicated that appellant had committed another crime not related to the crime of murder.

5. The lower court erred in allowing the introduction of inflammatory photographs of the deceased when the cause of death was admitted.

The testimony in this case is essentially the same as in *Bosnick* v. *State*, 248 Ark. 846, 454 S. W. 2d 311, except that in this case Bosnick, Jr., a son of the appellant in the former case, took the witness stand in his own behalf. His mother, Mary Evelyn Tucker, also testified.

Appellant's testimony shows that he was 17 years old at date of trial. When he was 15, he stole a truck and went to reform school. Before leaving his mother's home in Louisiana, his father had called and asked him to steal a vehicle and bring it to Arkansas. Instead, appellant, Dewey Ray Murray and Danny McKay came to Arkansas in Dewey Ray Murray's car. In Arkansas, after drinking beer and whisky furnished by the father, they burglarized a filling station where they obtained some tires, while appellant's father drove up and down the road outside the station. The tires were put on Dewey Ray Murray's car. On the date of the killing, appellant, Dewey Ray Murray and Danny McKay again had been drinking beer and whisky supplied by Bosnick, Sr. During the afternoon, appellant entered Gatteys' store to look for guns and see how many people were in the store. Appellant testified that he told his father that he didn't want anything to do with robbing Gatteys' store and that they should call it off. However, appellant stated that his father told him that if he backed out, he, Bosnick, Sr., would whip appellant. He stated that when he went into the store the second time he fired a shot into the shelves and later fired a shot by Mrs. Gatteys' foot, which scared her so that she could not walk. Appellant then heard a knock at the door and tried to open it, thinking it was his father. After the door was opened, he told whoever was outside to come in but the person fired first and when he felt the fire hit him in the face he started shooting. He said that he was scared of his father and thought his father was shooting at him. Appellant

denied having shot over Mrs. Gatteys' shoulder and denied having heard anyone or anything other than a knock on the door. On cross-examination he stated that after the person who fired at him turned and ran, appellant ran outside and fired. Other testimony by appellant shows that he did not know that it was not his father he was firing at until after he saw his father get in the car after the robbery was over.

The testimony of Mrs. Tucker shows that appellant was not a bright boy, that while not low enough to go to a mentally retarded class he was always the lowest in his class. He repeated the first and third grades. Promotion from the third grade was on a physical promotion. It was during his third year in the eighth grade that he got into trouble and was put in the reform school. Mrs. Tucker says that Bosnick, Sr., kept calling appellant over her objection. Mrs. Tucker was cross-examined by the prosecuting attorney about assistance or aid she gave appellant during an escape following his original arrest and prior to trial. This was over appellant's objections.

POINT 1. Under the information here filed against appellant which alleges that he "unlawfully, wilfully and feloniously after premeditation and deliberation and of their malice aforethought did assault, kill and murder Jessie J. Morgan by shooting him with a fire arm," we hold that appellant's version of the shooting, if believed, is sufficient to sustain a finding of second degree murder. Consequently the trial court erred in failing to instruct the jury on second degree murder. See *King v. State*, 117 Ark. 82, 173 S. W. 852 (1915); *Montague v. State*, 240 Ark. 162, 398 S. W. 2d 524 (1966).

It is suggested that the appellant may not urge the error of the trial court in failing to instruct on second degree murder because appellant offered no instruction on that issue. The record with respect thereto is as follows:

"MR. SHARPE: The defendant would request that you give the jury the contents of Section 43-2152: 'The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the Court shall impanel a jury and examine testimony, and the degree of crime shall be found by such jury.'

THE COURT: In other words, as I understand it, Mr. Sharpe, you are asking the Court to instruct the jury that they may find the defendant guilty of murder in the first degree, or murder in the second degree, or manslaughter.

MR. SHARPE: Yes, Your Honor.

THE COURT: That request will be refused, because the Court is of the opinion that this is a case where murder was perpetrated, or the murder happened while perpetrating the crime of robbery in which this defendant participated, and therefore can only be murder in the first degree, or nothing, and that is the way the Court will instruct the jury.

MR. SHARPE: Then, as I understand, you will not read 43-2152, which the defendant has requested?

THE COURT: That's right.

MR. SHARPE: Note our objection to the Court's ruling."

Ark. Stat. Ann. § 43-2723, (Repl. 1964), with reference to capital cases, provides:

"In all cases appealed from the circuit courts of this State to the Supreme Court, or prosecuted in the Supreme Court upon writs of error, where the appellant has been convicted in the lower court of a capital offense, all errors of the lower court preju-

dicial to the rights of the appellant shall be heard and considered by the Supreme Court whether exceptions were saved in the lower court or not; and if the Supreme Court finds that any prejudicial error was committed by the trial court in the trial of any case in which a conviction of a capital offense resulted, such cause shall be reversed and remanded for a new trial, or the judgment modified at the discretion of the court."

In *Maxwell* v. *State*, 236 Ark. 694, 370 S. W. 2d 113 (1963), we pointed out that by virtue of this statute it was not necessary in capital cases for the appellant to formally save exceptions to adverse rulings of the court. To require a defendant to submit an instruction after the court had ruled as it did, above, would be virtually requiring a formal exception to an adverse ruling. For this error we reverse and remand to the trial court.

POINT 2. Appellant's argument under point 2 really goes to the trial court's action in submitting an instruction to the jury that murder committed in the perpetration of/or in an attempt to perpetrate arson, rape, robbery, burglary or larceny is murder in the first degree. Appellant made no objection in the trial court to the giving of the instruction. The evidence is certainly sufficient to sustain a conviction on premeditation.

POINT 3. Ark. Stat. Ann. Section 41-2246 (Repl. 1964), provides:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide, shall devolve on the accused, . . ."

There was no error in the trial court's instructing the jury with reference to this statute under the defense here interposed. See *Bagley* v. *State*, 247 Ark. 113, 444 S. W. 2d 567.

POINT 4. We find no merit in appellant's contention that his mother could not be cross-examined about her conduct in aiding or assisting in his escape. Such evidence was admissible to attack Mrs. Tucker's credibility and the fact that it implicated appellant in another crime did not make it inadmissible to inquire about on cross-examination.

POINT 5. We find no merit in appellant's contention with reference to admission of photographs of the deceased. See *Bosnick* v. *State,* 248 Ark. 846, 454 S. W. ed 311.

Reversed.

Harris, C. J., and Fogleman and Jones, JJ., dissent.

Carleton Harris, Chief Justice, dissenting. I dissented in *Bosnick* v. *State,* 248 Ark. 846, 454 S. W. 2d 311, and everything said in that dissent, applies with equal force to my feelings in the case now before us.

The more I have contemplated the effect of that decision, the more distressed I have become at the position the court has taken.

The reversal in both cases is based on the fact that the prosecuting attorney charged these defendants with "unlawfully, wilfully and feloniously after premeditation and deliberation and of their malice aforethought did assault, kill and murder Jessie J. Morgan by shooting him with a fire arm", rather than charging murder committed in the perpetration of robbery. This, said the court, in the opinion handed down on June 1, entitled the elder Bosnick to instructions on the lesser degrees of homicide, and likewise entitles the son to an instruction on second degree murder in the present case.

I pointed out in the first dissent that under §43-1006 and 43-1007 Ark. Stat. (1964 Repl.), it is not necessary to include a statement of the acts constituting

the offense, and it is only necessary to accuse "John Doe" of the crime of murder by setting out the date on which the offense occurred (not absolutely essential) and the county in which the offense occurred, and the person alleged to be murdered.[1] In *Thompson* v. *State,* 205, 1040, 172 S. W. 2d 234, we sustained the validity of an information which followed that simple form.

I do not like to reiterate what I have said in a previous dissent, but I cannot refrain from quoting from *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849, the case and language being so pertinent to the question at issue today. There, we said:

"In the discussion of homicide by poison or in the perpetration of felony, the annotator there said: 'The courts have frequently decided that where the only evidence of a homicide tends to show that it was committed by poison *or in the perpetration of, or an attempt to perpetrate, one of the felonies enumerated in the statute defining murder in the first degree, no instruction on any grade of homicide less than murder in the first degree is necessary, and that one convicted of murder in the first degree on such evidence is not entitled to a new trial because of a failure to charge the law on a lower grade of homicide, or because of an instruction that no conviction of a lower degree can be had.'* " [My emphasis]

In reviewing the present case, it seems to me that this court has gone even further than in the case involving the elder Bosnick, (handed down June 1), for here, Franklin David Bosnick, Jr. actually fired some of the shots that struck Morgan.

The majority relate appellant's version of the shooting as follows:

"He [appellant] stated that when he went into the store the second time he fired a shot into the shelves

---

[1]This improvement in criminal procedure was made by the people of the State of Arkansas in 1936 when they adopted initiated Act No. 3.

and later fired a shot by Mrs. Gatteys' foot, which scared her so that she could not walk. Appellant then heard a knock at the door and tried to open it, thinking it was his father. After the door was opened, he told whoever was outside to come in but the person fired first and when he felt the fire hit him in the face he started shooting. He said that he was scared of his father and thought his father was shooting at him. Appellant denied having shot over Mrs. Gatteys' shoulder and denied having heard anyone or anything other than a knock on the door. On cross-examination he stated that after the person who fired at him turned and ran, and that he, appellant, ran outside and fired. Other testimony by appellant shows that he did not know that it was not his father he was firing at until after he saw his father get in the car after the robbery was over."

It is then stated that his version of the shooting "if believed, is sufficient to sustain a finding of second degree murder. Consequently the trial court erred in failing to instruct the jury in second degree murder".

I completely disagree. Here, a robber killed a person during a holdup; for this court to hold that Bosnick is entitled to consideration on this theory of accidental homicide (and that based on some sort of theory of self-defense), is unthinkable. The fact that he thought somebody was shooting at him, and he fired back, killing the wrong man, would not, even if believed by the jury, justify a reduction to second degree murder. We have held that a defendant may not rely upon the fact that he unintentionally killed the wrong man. In *Brooks* v. *State*, 141 Ark. 57, 216 S. W. 705, quoting from Volume 1, Section 17, of Michie on Homicide, we said:

"The thing done follows the nature of the thing intended to be done, and the guilt or innocence of the slayer depends upon the same considerations that would have governed had the blow killed the person against whom it was directed. In determining the criminality of the act of killing it is immaterial whether the intent

was to kill the person killed or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill some one else. * * * The general rule is that when one person is killed by mistake or accident, the character of the offense is the same that it would have been if the person intended had been killed."

Mr. Morgan, an officer of the law, in endeavoring to protect the property of the Gatteys, knocked at the door, stating that he was "the law". According to the state's evidence, appellant directed Mrs. Gatteys to open the door while he stood behind her and fired over her shoulder. He then went outside and she heard additional shots. Morgan was subsequently found dead with both .22 bullets (Bosnick was firing a .22 pistol) and rifle bullets (fired by another person) in his chest. Thus, an officer gave his life in the line of duty while trying to prevent a robbery, and whether the robber, Bosnick, Jr., shot him intentionally or accidentally, is immaterial under my view. To my way of thinking, he was still guilty of first degree murder and was not entitled to any instruction relating to a lesser degree of homicide.

I respectfully dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. Appellant did not at any time offer any instruction defining second degree murder or manslaughter, either voluntary or involuntary. He only requested the reading of Ark. Stat. Ann. § 43-2152 (Repl. 1964), which was not a correct instruction on any degree of homicide, or any jury instruction at all for that matter. It certainly would give a jury no guideline by way of distinction of the degrees of homicide or of punishment. Furthermore, appellant did not object to any instruction given, or to the omission of any issue in the instructions given.

If appellant desired an instruction upon any issue, phase or theory of the case, he should have submitted one to the court embodying a proper statement of the law in that particular, and, not having done so, he

cannot complain of the court's failure to give the instruction. *McKinney* v. *State*, 215 Ark. 712, 223 S. W. 2d 185; *Cellars* v. *State*, 214 Ark. 326, 216 S. W. 2d 47; *Lucius* v. *State*, 116 Ark. 260, 170 S. W. 1016; *Jackson* v. *State*, 92 Ark. 71, 122 S. W. 101; *Lowmack* v. *State*, 178 Ark. 928, 12 S. W. 2d 909. See also, *Stevens* v. *State*, 231 Ark. 734, 332 S. W. 2d 482.[1] In a case where this court found that a defendant was entitled to a manslaughter instruction, it was held that the failure to give an instruction on that degree of homicide was not reversible error because the defendant's request was made by an offered instruction which was not proper because it was misleading. *Allison* v. *State*, 74 Ark. 444, 86 S. W. 409.

In *Cooley* v. *State*, 213 Ark. 503, 211 S. W. 2d 114, the accused was prosecuted on a charge of second degree murder and convicted of voluntary manslaughter. On appeal, he complained because no instruction defining involuntary manslaughter was given. The assignment of error recited:

"The court erred in failing and refusing to instruct the jury as to the law regarding involuntary manslaughter, as requested by the defendant, to which action of the court the defendant at the time objected and saved his exceptions."

A search of the transcript revealed that no requested instruction was ever *presented* to the circuit judge. There is no indication that the court was not made aware of the issue by means other than the offer of an instruction stating the law. Rather, the opinion equated the situation to that prevailing in *Pate* v. *State*, 206 Ark. 693, 177 S. W. 2d 933, and stated:

\* \* \* if appellant desired an instruction, he should

---

[1]For civil cases applying the rule see: *Wallace* v. *Riales*, 218 Ark. 70, 234 S. W. 2d 199; *Sternberg Dredging Co.* v. *Dawson*, 171 Ark. 604, 285 S. W. 32; *Missouri Pac. R. Co.* v. *L. B. Stone Grocery Co.*, 163 Ark. 247, 259 S. W. 728; *St. Louis, I. M. & S. Ry. Co.* v. *Dupree*, 84 Ark. 377, 105 S. W. 878; *Choctaw & O. G. R. Co.* v. *Baskins*, 78 Ark. 355, 93 S. W. 757.

have submitted one to the court "setting forth a proper statement of the law in that particular, and, not having done this, he cannot complain of the court's failure to give such instruction."

In *Pate v. State, supra,* we stated that it was well settled that it is not the duty of a trial court to give an instruction on any point unless a *correct* instruction on that point is asked, quoting from *Atkinson v. State,* 133 Ark. 341, 202 S. W. 709. There is also a very close parallel between *Pate* and the case now before us. Pate was charged with, and convicted of, maiming. The similarity of the proceedings is best demonstrated by quoting from the opinion:

> Appellant complains that the trial court erred in not granting his request for an instruction on aggravated assault and assault and battery, because these misdemeanors were included in the crime of maiming charged in the information. The record as to this request is as follows: "Mr. Gean: 'I ask the court to instruct the jury on aggravated assault and assault and battery.' The court refused this request and the defendant excepted. Counsel did not submit written requests." Counsel for appellant did submit numerous written instructions which the court was requested to give.

We held:

> Appellant, if he desired an instruction of this kind, should have submitted to the court an instruction as to aggravated assault and assault and battery setting forth a proper statement of the law in that particular, and, not having done this, he cannot complain of the court's failure to give such instruction.

To distinguish these authorities from the record before us would require hairsplitting in the ultimate degree. I respectfully submit that the detour attempted to avoid this obvious obstacle has not circumvented it,

because it leads to a dead end via a blind alley. We are required by the statute quoted in the majority opinion to review alleged errors in a case where capital punishment has been imposed whether or not exceptions were saved after an adverse ruling on an objection properly made. The taking of human life, even of one who has actively participated in the brutal assassination of an officer of the law who was only making a conscientious effort to afford the protection of the law to persons entitled thereto, is a serious matter, and great caution and circumspection should be exercised to see that due process of law has been observed. The statute is accordingly appropriate, and we should, and do, carefully examine rulings on questions properly presented to the trial court. The statute has never been stretched to the point it is now said to reach by the majority, and I submit that it is not that elastic. The requirement of a request for a specific instruction on a specific issue simply cannot be equated with the saving of exceptions. The former serves to clearly present a question for a ruling by the court, as does an objection. An exception simply indicates to the trial judge and the adversary that the exceptor does not acquiesce in the court's ruling. Clearly the making of a proper record of objections, even in matters pertaining to instructions is not excused by this statute. *Fields* v. *State*, 235 Ark. 986, 363 S. W. 2d 905; *Jenkins* v. *State*, 222 Ark. 511, 261 S. W. 2d 784.

I would affirm the judgment.

J. FRED JONES, Justice, dissenting. I respectfully dissent from the majority opinion in this case. Certainly there is no evidence in the record that young Bosnick and his father went to the Gattey's store with the intention and for the purpose of murdering Deputy Sheriff Morgan, who wasn't even there. The evidence is clear that the Bosnicks armed themselves for any contingency and went to the store with the intention and for the purpose of robbing the owners of the store. They went prepared to use whatever force was necessary in carrying out their intention and in accomplishing their purpose.

It is obvious from the record that Mr. Morgan was murdered in the perpetration of, or attempt to perpetrate, the robbery, and it is obvious from Ark. Stat. Ann. § 41-2205 (Repl. 1964) that the murder of Mr. Morgan constituted murder in the first degree. Section 41-2205 reads as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree."

It is my opinion that this statute was specifically designed for the exact situation in the case at bar. Common sense dictates that in armed robbery by outlaw gangs it may be difficult indeed to prove who shot whom and with what weapon.

The appellant contends that he is not guilty of homicide in any degree. According to his version, he only intended to rob and didn't intend to kill anybody. He only fired his gun in order to paralyze his victim with fear. When he shot the deceased, he did not intend to shoot *him* at all. He thought he was only firing at his father in self-defense.

It is my opinion in this case, as it was in the case of the appellant's father, *Bosnick* v. *State*, 248 Ark. 846, 454 S. W. 2d 311 that when the state proved the murder of Mr. Morgan in the perpetration of robbery by young Bosnick and his father, the state proved both Bosnicks guilty of murder in the first degree. The allegation in the information that the killing was willful, deliberate, malicious and premeditated, only goes to the charge and not to the crime. If a killing is already first degree murder, the allegation or proof that it was willful, deliberate, malicious and premeditated adds nothing to the degree and a failure to prove the allegation that the murder was willful, deliberate, mali-

cious and premeditated would subtract nothing from the degree. Murder committed in the perpetration of robbery was proved in the case at bar and degree was fixed at first degree by statute.

In my opinion the proof should take precedent over the allegation. This is not a case of alleging the commission of one degree of homicide and proving another; this is a case of alleging first degree murder because of willful intent, and *proving* first degree murder whether it was willful and intentional or not.

I would affirm the judgment of the trial court.