DEWEY RAY MURRAY *v.* STATE OF ARKANSAS

5487                                      462 S. W. 2d 438

Opinion delivered February 1, 1971

[Rehearing denied February 15, 1971.]

888

*Knox Kinney,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Dewey Ray Murray, appellant herein, was convicted of murder in the first degree, and his punishment fixed at death by electrocution in accordance with the jury's verdict and Ark. Stat. Ann. § 41-2227 (Repl. 1964).[1] From the judgment so rendered, appellant brings this appeal. For reversal, four points are asserted, as follows:

"1. The lower court erred in its refusal to instruct the jury on second degree murder and the other degrees of homicide.

II. The lower court erred in refusing to permit Counsel for appellant to argue that appellant was not guilty of death.

III. The lower court erred in refusing to instruct the jury upon circumstantial evidence.

---

[1]Actually this Section provides that when one receives the death penalty, it shall be carried out by hanging. Ark. Stat. Ann. § 43-2611 (1964 Repl.) changed the law to provide for electrocution.

IV. The lower court erred in allowing the intro-
duction of inflammatory photographs of the
deceased when the cause of death was ad-
mitted."

The evidence reflects that Murray, Danny Wayne
McKay, Franklin Bosnick, and Franklin Bosnick, Jr., were
involved in a robbery of Gatteys' Grocery Store on High-
way 79 south of Hughes, Arkansas, when Jessie J. Mor-
gan, a police officer, was killed. Testimony by Norris
Hodge, a funeral director, was that Morgan's death was
occasioned by multiple gun shot wounds—three or four
.30 caliber wounds and six .22 caliber wounds.

Mrs. Joyce Gatteys, who with her husband, operates
the grocery referred to, testified that in the late afternoon
or early night of December 31, 1968, David (Franklin Jr.)
Bosnick entered the store and fired a pistol (22 caliber)
at her husband, the bullet hitting some candy in the
back[1a] of the store. Two other men, later identified as
Dewey Ray Murray and Danny Wayne McKay, then came
in with "long barreled guns". James Edwards, the
"sweep-up" boy, was told to lock the door and Bosnick
instructed the Gatteys and Edwards to go to the back.
Jimmy Vance, a farm worker came to the door (which
was open) from the outside, but Mrs. Gatteys signaled
to him and he left.[2] According to the witness, Bosnick
told her to get a paper bag and put the money from the
cash register in it: he also directed that she put in the
change. Murray also demanded money and Mrs. Gatteys
got some silver halves and old coins; appellant also took
the sweep-up boy's wallet and her husband's wallet,
threatening her husband, and taping his hands. About
that time, there was a knock on the door and a voice
clearly said "Mrs. Gatteys, this is the law". Bosnick de-
clared "Well, I'll take care of that S. B.", and directed
Mrs. Gatteys to open the door. The witness stated that
when she complied, Bosnick shot over her, and went out

[1a] Mrs. Gatteys saw all the defendants within a few minutes after
they had been taken into custody by the officers, and identified them
as the robbers at that time.

[2] Edwards slammed the door closed as Vance started to enter.

onto the porch, firing several shots with his pistol. Returning, he said "I just killed one son-of-a-b...., and I may kill another one." Murray stated "Well, I guess I better go out here and finish this job off out here", and went out the door, with a long barreled gun.[3] Mrs. Gatteys heard more shots fired, and the intruders ran out of the room.

James Edwards corroborated Mrs. Gatteys' testimony up to the time of the shooting. He said that when Bosnick Jr. came back in after shooting the pistol, he knelt on the floor trying to eject the spent cartridges and said, "I just killed one man, let me see if I got enough to kill another." Edwards said that at this time appellant commented, "Well, I'll go out and finish this job," and that he had a 30-30 rifle as he went out the door.

Jimmy Vance told how the store door was slammed in his face by Edwards and stated that he became suspicious and notified his boss by radio to call the law. J. W. Helms, farm manager for Shannon Brothers Enterprises, the farm on which Gatteys Grocery is located, saw officer Morgan walk around toward the residential part of the building and heard pistol shots. Then someone began firing at him. After more officers arrived, he saw Morgan lying dead, left of the steps leading to the living quarters. Trooper Bob Self testified that he and Trooper Hadaway, riding together, received the call advising that an armed robbery had taken place at Gatteys' Grocery Store. The officers started in that direction, and upon arriving, observed a 1959 Chevrolet convertible, with three white men in it. Self stated that as they pulled in front of the car, one of the subjects had a high powered rifle aimed across the back of the front seat at them (it developed that this man was Murray); they got out of the car and took four men into custody, one of the men lying on the back floor board of the convertible. W. D. Davidson of the Arkansas State Police Criminal Investigation Department arrived while Morgan's body was still in the yard. He talked with each of the suspects at that time and appellant's immediate statement was that he fired neither the pistol nor the rifle. Other supporting testimony was

---

[3]The long barreled gun was a 30-30 rifle.

offered by the state, but it is not necessary to detail this evidence in determining this appeal.

Appellant, 25 year of age, testified that he was a high school graduate and had been honorably discharged from military service in January 1966; that he was employed by Park Woods Products in Pineville, Louisiana. He said that Franklin Bosnick, Sr. talked the other three into participating in the robbery. His testimony is not substantially different from that of Mrs. Gatteys until Morgan knocked on the door. Appellant stated that he first thought it might be Franklin Bosnick. He then heard a pistol firing, went outside, and David Bosnick handed the pistol to him and took the 30-30 rifle from him; Bosnick fired the 30-30 until it was empty, and gave it back. Murray stated that he did not fire the rifle at any time.

With reference to the first point for reversal, appellant contends that the trial court should have instructed the jury on second degree murder pursuant to the provisions of Ark. Stat. Ann. § 43-2152 (Repl. 1964). The state, citing Ark. Stat. Ann. § 43-1024 (Repl. 1964) contends that the information was amended to charge a "felony murder" and that under *Clark* v. *State*, 160 Ark. 717, 276 S. W. 849 (1925), and other similar decisions, the court was not required to instruct on any degree except first degree murder; that appellant was guilty of that offense, or nothing.

The information filed by the prosecuting attorney, after setting forth where and when the offense was committed, accused Murray and the others of the crime of murder in the first degree in that they "unlawfully, wilfully, and feloniously after premeditation and deliberation and of their malice aforethought did assault, kill, and murder Jessie J. Morgan by shooting him with a firearm or firearms".

In instructing the jury, the court read the information and then added "and the information has been amended to allege that the killing occurred 'while the

defendants were perpetrating or attempting to perpetrate the crime of robbery, against the peace and dignity of the State of Arkansas.' " The record, (amending the original transcript) clearly reflects that this was done in chambers before the jury was ever selected for the trial of the case. The attorney for appellant stated to the court that he desired to object "to the Prosecuting Attorney verbally charging him during the course of the trial with first degree murder in the commission of a robbery. Now, when we get to the final argument, he can argue that he's guilty as alleged in the Information, under the law as charged by the Court, but to continually and repeatedly, in opening statements and the course of the trial, charge him verbally with a charge of murder other than as specified by the Information would be a grave error, and defendant requests the Court to so instruct". The prosecuting attorney stated "I think the fact, if the proof shows, the law says what murder in the first degree shall constitute, but if he's raising that, I would like to amend by 'comma perpetrated in a robbery' ". Whereupon the court said "The Court will permit the amendment to the Information to charge this defendant with committing the crime of murder while perpetrating or attempting to perpetrate the crime of robbery". Objections and exceptions were taken to the court's order.

Ark. Stat. Ann. § 43-1024, being Initiated Measure 1936, No. 3, § 24, provides as follows:

"The prosecuting attorney or other attorney representing the State, with leave of the court, may amend an indictment, as to matters of form, or may file a bill of particulars. But no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged. All amendments and bills of particulars shall be noted of record."

What is "the record"? In *Silas v. State,* 232 Ark. 248, 337 S. W. 2d 644, quotting an earlier case,[4] we said:

---

[4]*Baker v. Allen,* 204 Ark. 818, 164 S. W. 2d 1004.

"The record proper includes the pleadings, any exhibits thereto, statement showing service of summons, any material order of court preceding judgment, the judgment itself, motion for new trial, the order overruling same, and the grant of appeal."

It was not necessary that the Information itself be amended, but only necessary that an order of the court be made and it is sufficient if the court simply dictates the order to the court reporter. In *Lane, Smith & Barg v. State*, 217 Ark. 114, 229 S. W. 2d 43, a situation arose that we consider analogous. The opinion reflects the following:

"Appellants say that their motion to quash the indictments should have been sustained because the Court's minutes or records did not affirmatively show that the indictments were returned in open Court in the presence of the Grand Jury, nor was it shown that twelve of the jurors voted to indict; and, secondly, there was no legal evidence presented to. the Grand Jury upon which it could base true bills.

The indictment was indorsed. 'Returned into open Court, in the presence of all the Grand Jury, by the foreman thereof, and filed this 17th day of October, 1949'. In passing on the motion Judge Harrison dictated a statement to the Court Reporter, the substance of which might well have been taken from the docket."

The statement of the judge referred to, was simply that the Grand Jury had gone into open court and reported the two indictments. This court held that the trial court correctly denied the motion to quash.

It will be observed that the amendment did not change the nature of the crime charged nor the degree of the offense, and it was accordingly entirely permissible for the amendment to be made. See *Lee v. State*, 229 Ark. 354, 315 S. W. 2d 916. Of course, there was no element of surprise since appellant was familar with the nature of the crime with which he was charged, two of the other

defendants having already been tried; nor had he ever, at any time, requested a Bill of Particulars. It follows that there is no merit in this contention.

Nor do we find merit in appellant's second point for reversal. Counsel for Murray in chambers stated to the court that he planned to argue to the jury that the defendant was "not guilty of death". The court stated: "Counsel for defendant proposes to argue to the jury that if they believe that the defendant did not fire a shot at the deceased, 'then they may find him not guilty of the death penalty.' The court will not permit counsel for the defendant to argue in that language, because it is contrary to the law, as the Court understands it. The Court will permit Counsel to argue, if he wants to, that if they find that he did not fire a fatal shot at the deceased, that, although under the law he would be considered guilty, at the same time if he did not fire a shot, it should have some bearing on the punishment that he should receive, and anything that counsel wants to say in that respect he can, but not using the words 'not guilty of any death penalty' because the defendant is not found guilty of a penalty." Further, "The court is not saying, and I thought I made it plain in my opening statement, that counsel for the defendant may argue, may put forth any argument that he desires that the defendant should not receive the death penalty, but the Court is saying that he should not use the words 'He is not guilty of the death penalty.' Now, anything you want to argue, you may, but you use the words and terms 'you may find him not guilty of the death penalty.' The Court says that is improper argument."

The court was, of course, correct. It was within the province of the jury to give life imprisonment if they so desired, but the statute provides that the punishment for the offense charged, if found guilty, is either death by electrocution or life imprisonment.

There was no error in refusing to instruct the jury upon circumstantial evidence. In a "felony murder" charge, the necessary elements for conviction are the

perpetration or attempt to perpetrate a felony,[5] a killing occurring during the course of the crime. Of course, the direct evidence from the state's witnesses, and even of appellant himself, established that Morgan was killed during the perpetration of the robbery. In other words, it was not necessary to show that Murray actually fired the shots that killed Morgan. For that matter, we have held that the refusal to give instructions on circumstantial evidence even where the case depends wholly upon such evidence, is not error if the court has already fully and correctly instructed the jury upon the credibility of witnesses, the weight of the evidence, the presumption of innocence, and reasonable doubt. *Ridenour* v. *State,* 184 Ark. 475, 43 S. W. 2d 60. There instructions were given in the instant case without objection.

Finally, it is asserted that the court erred in allowing introduction of photographs of the deceased, the cause of death being admitted. We have held numerous times that the proper admission of photographs directs itself to the discretion of the trial court, and as recently as June 1, 1970, we held in *Franklin Bosnick* v. *State,* 248 Ark., 454 S. W. 2d 311, where these same photographs were offered into evidence, that there had been no abuse of discretion by the court in permitting them to be introduced. Likewise, under the facts in this case, we find no abuse of discretion.

Affirmed.

BYRD and HOLT, JJ., dissent.

CONLEY BYRD, Justice, dissenting. In the performance of my duties, I find no pleasure in reversing a criminal case when the accused's conduct is akin to that of a vicious beast, even though the law requires a new trial. Believing, however, as between an individual and society, that the law should be fairly and impartially applied without respect to personalities, I undertake, without

---

[5]This offense is defined in Ark. Stat. Ann. § 41-2205, (Repl. 1964). Under the provisions of the statute, all felonies are not included, only arson, rape, robbery, burglary, and larceny.

pleasure, to show my disagreement with that portion of the majority view holding that the failure to instruct on second degree murder was not error.

One of the statutes here involved is Ark. Stat. Ann. § 43-1024 (Repl. 1964) which provides:

> "Amendment of indictment.—The prosecuting attorney or other attorney representing the State, with leave of the court, may amend an indictment, as to matters of form, or may file a bill of particulars. But no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged. *All amendments and bills of particulars shall be noted of record.*"

It will be noted that the statute provides that, *"no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged."* In the first Bosnick case, *Bosnick v. State,* 248 Ark. 846, 454 S. W. 2d 311, we pointed out that the information here involved charged that "class of murder" known as "premeditated murder" and that it was error to fail to instruct the jury on second degree murder.

The distinction between "premeditated murder" and "felony murder" came into being through interpretations of this court. In the Revised Statutes of 1838, approved by the legislature March 10, 1838, "offenses against the persons of individuals" was divided into MURDER and MANSLAUGHTER. Murder was defined as (Revised Statutes, Chap. XLIV, Div. III, Art. I, Sec. I) ". . . the unlawful killing of a human being, in the peace of the State, with malice aforethought, either expressed or implied." The only penalty was death (Chap. XLIV, Div. III, Art. I, Sec. 7.). Manslaughter was defined (Chap. XLIV, Div. III, Art. II, Sec. 1) as ". . . the unlawful killing of a human being, without malice express or implied, and without deliberation." The penalty was a fine of not less than $1,000 nor more than $10,000 and imprisonment

not exceeding seven years. Subsequently by an act approved December 17, 1838, the legislature provided:

"An Act modifying the Penal Code, to correspond with the establishment of a Penitentiary.

*Be it enacted by the General Assembly of the State of Arkansas,* that all murder which shall be perpetrated by means of poison or by lying in wait, or by any other means of wilfull, deliberate, malicious, and premediated killing, or which shall be committed in the perpetration of, or in the attempt to perpetrate, arson, rape, robbery, burglary, or larceny, shall be deemed murder in the first degree, and all other murder shall be deemed murder in the second degree; and the jury shall in all cases of murder, on conviction of the accused, find by their verdict, whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impannel and examine testimony, and the degree of crime shall be found by such jury.

SEC. 2. *And be it further enacted,* That every person convicted of murder in the first degree, or as accessory before the fact to such murder, shall suffer death by hanging by the neck; and every person convicted of murder in the second degree, shall be sentenced to undergo imprisonment in the public jail and penitentiary house, for a period not less than five years nor more than twenty-one years.

SEC. 3. *Be it further enacted,* That whoever shall be convicted of the crime of voluntary manslaughter, shall undergo imprisonment in said jail and penitentiary house, for a period of not less than two nor more than seven years; and every person who shall be convicted of involuntary manslaughter, shall be imprisoned in said jail and penitentiary house, for a period not exceeding twelve months. . ."

Over the years the clauses in the first section of the act became codified as separate statutes. That section now

appears in Arkansas Statutes Annotated as follows:

"Ark. Stat. § 41-2205. MURDER IN FIRST DE-CREE DEFINED All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree. [Act Dec. 17, 1838, § 1(1st clause), p. 121; C. & M. Dig., § 2343; Pope's Dig., § 2969.]

"Ark. Stat. § 41-2206. MURDER IN SECOND DE-GREE. All other murder shall be deemed murder in the second degree. [Act Dec. 17, 1838, § 1 (2nd clause), p. 121; C. & M. Dig., § 2344; Pope's Dig., § 2970.]

"Ark. Stat. § 43-2152. MURDER CASES—DE-GREE OF OFFENSE FOUND BY JURY. The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury and examine testimony and the degree of crime shall be found by such jury. [Act Dec. 17, 1838, § 1 (3rd clause), p. 121; C. & M. Dig., § 3205; Pope's Dig., § 4041.]"

In *Clark* v. *State*, 169 Ark. 717, 276 S. W. 849 (1925), on a not guilty plea, we construed the statute requiring the jury to find whether the offense constituted first or second degree murder to be directory only. We held that where the evidence showed that the murder occurred while the defendant was perpetrating a felony, trial courts could properly instruct the juries to find first degree murder or nothing.

However, this court has consistently made a different construction of the act when trial for murder is had on a guilty plea. Upon a plea of guilty to a first degree murder charge, it makes no difference whether the

charge is "felony murder" or "premeditated murder" because in each instance, our cases hold, raising the issue on this court's own motion, that the trial court must submit the issue of the defendant's guilt to the jury upon both first degree and second degree murder. See *Wells* v. *State*, 193 Ark. 1092, 104 S. W. 2d 451 (1937), and *Walton* v. *State*, 232 Ark. 86, 334 S. W. 2d 657 (1960).

The impractical and inconsistent results arising from our application of the 1838 Act, *supra*, are readily demonstrated by this record. Here, although the appellant entered a plea of not guilty, he took the witness stand and admitted his involvement in the conspiracy to rob, the killing of Officer Morgan in his presence and that the 30-30 rifle in his possession when he went out of and came back into the house was used to put 30-30 bullets into Officer Morgan's body. I submit that a plea of guilty would not have admitted more. Are we not then putting form before substance in the application of the statute?

Notwithstanding the fact that the majority rely upon the amendment of the information to charge "felony murder" to get around the statutory requirement that the jury be required to find by their verdict whether appellant be guilty of murder in the first degree or second degree, the majority opinion states:

"It will be observed that the amendment did not change the nature of the crime charged nor the degree of the offense. . ."

The latter statement was made because of Ark. Stat. Ann. § 43-1024, *supra*, providing that "no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged."

As I view the record here, appellant without the amendment would have been entitled to the instruction on second degree murder. We so held on identical facts in *Bosnick* v. *State, Supra,* and in *Bosnick* v. *State,* 248 Ark. 1289, 455 S. W. 2d 688. I cannot be intellectually

honest with myself and agree that an amendment to the information and bill of particulars which removes the accused's right to a second degree murder instruction and which permits the trial court to tell the jury to either find him guilty of first degree or turn him loose does not change the nature and degree of the crime involved.

Finally, the majority says that the change or amendment of the information complied with that part of Ark. Stat. Ann. § 43-1024 which requires that: "All amendments and bills of particulars shall be noted of record." The amendment here made was a verbal motion by the prosecuting attorney and a verbal statement by the trial judge that it was granted. The only record, if it be called a record, was that which the court reporter took down in short hand. If this constitutes a record within the meaning of the statute, I am at a loss to understand why the people, in enacting Ark. Stat. Ann. § 43-1024, bothered to write the above quoted requirement into the statute because it is pure surplusage.

Furthermore, our law in the graver affairs of life, particularly with respect to last wills and testaments, require that any and all amendments thereto be in writing. As I read our criminal laws they require indictments, informations and bills of particulars to be in writing. Should an amendment to an information be any less formal? When appellant's mother or my grandchildren ask me why an amendment to an instrument seeking to dispose of a man's property has to be executed with greater formality than an amendment to an indictment seeking to take his life, I will have to say, "I do not know," and will further have to admit that the greater formality placed on property over life appears to be a blemish upon that justice which the ordinary citizen expects of the law.

For these reasons I would reverse and remand for a new trial because of the trial court's failure to instruct on second degree murder in accordance with the 1838 Act.