Charles BURGY *v.* STATE of Arkansas

CR 74-9                    509 S.W. 2d 820

Opinion delivered June 3, 1974

*Harold L. Hall,* Public Defender, by: *John W. Achor,* Chief Dep. Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings Jr.,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Charles Burgy was a roomer in a rooming house of which John Nichols was the proprietor. On May 4, 1973, Nichols died as a result of a gunshot wound inflicted by Burgy on that date at a time when Nichols was at or near the doorway to Burgy's room. There were no eyewitnesses, other than Burgy, who claimed that the shooting was done in self-defense. Burgy's sole point for reversal is that the evidence was insufficient to sustain the verdict finding him guilty of second degree murder. We find that it was sufficient.

Of course, the killing being admitted, the burden of proving justification was upon appellant, unless it was manifest from the evidence on behalf of the state that the crime amounted only to manslaughter or that appellant was justified in taking Nichols' life. Ark. Stat. Ann. § 41-2246 (Repl. 1964); see *Leonard* v. *State,* 251 Ark. 1090, 476 S.W. 2d 807; *Bosnick* v. *State,* 248 Ark. 1289, 455 S.W. 2d 688.

One of the elements of second degree murder which appellant argues cannot be found from the evidence is malice. Appellant recognizes that malice may be express or implied when no considerable provocation appears or when all of the circumstances of the killing manifest an abandoned and wicked disposition. See Ark. Stat. Ann. §§ 41-2203, 2204 (Repl. 1964). In support of his theory, appellant relies upon the recognized principle that one's place of residence is his castle and the rule that one is justified in taking the life of another who manifestly attempts, in a violent or tumultous manner, to enter the former's habitation for the purpose of assaulting or doing personal violence to him. Ark. Stat. Ann. §§ 41-2233, 2234 (Repl. 1964).

One of the witnesses who was in a bathroom in the house heard a knock on Burgy's door, about 20 feet away, and heard Nichols say, "Open the door," after which he heard Burgy ask "Who is that?" and Nichols responded "This is

John Nichols, Mr. Charlie. Open that door." He testified that Burgy then said, "I'm not gonna open that door. You get on away from my door." and that Nichols received a negative answer to his question, "You ain't gonna open that door, Mr. Charlie?" Then, said this witness, he heard Nichols say, "Well, if you feel like that and you don't want me to open the door and don't want me to be here, well, you can just get ready . . . ." when he was interrupted by a gunshot. This witness then ran out of the bathroom and saw Nichols on the floor and Burgy in his room with the door open.

Another witness who was getting a drink of water in the kitchen nearby said when Nichols first knocked on the door, he asked Burgy for permission to look around the room, which was denied, and Burgy called Nichols a son-of-a-bitch in telling him to get away from the door. This witness said that just before he heard the gunshot he heard Nichols say "If that's the way you feel about it, Mr. Burgy, why you can just pack up." This witness then heard someone fall and walked out and saw Nichols on the floor. Neither of these witnesses heard anyone kick on the door to Burgy's room.

An employee of the Pulaski County Sheriff's office, who was downstairs in the building, went upstairs when he was told that someone had been shot. He said that he saw Nichols on the floor and Burgy sitting on the bed in his room. According to this witness, Burgy said "Yeah, I killed the son-of-a-bitch. He tried to kick my damn door down. You all get out of here. You ain't got no business in here no way," and reached for a shotgun on the floor. This witness said he then identified himself, told Burgy not to touch the gun and remained until the police came.

The arresting and investigating police officers also said Nichols' body was in the hallway. The chief medical examiner for the state testified that the fatal wound in Nichols' left chest was inflicted from a distance of two inches to three feet.

The only testimony that Nichols threatened Burgy or entered the room came from a statement made to police officers by Burgy himself. The jury might well have found from the evidence that no considerable provocation appeared, that

the circumstances manifested an abandoned and wicked disposition on the part of appellant, that there was no attempt by Nichols to enter Burgy's room, either in a violent or tumultous manner or otherwise, or that Nichols had no purpose of assaulting or offering violence to Burgy. Any of such findings would have been sufficient basis for a verdict rejecting appellant's claim of self-defense and finding that the killing was with malice.

In *Maples* v. *State*, 225 Ark. 785, 286 S.W. 2d 15, quoting from other cases on this subject, we had this to say:

"But it must be a 'manifest' attempt, and we take this to mean one so plainly made that no reasonable doubt will exist as to the purpose of the aggressor. At what point the effort to enter the house has begun, and how far it may be permitted to proceed with safety to the life or person of the individual assailed, must be determined by the circumstances of each case; and these are questions more of fact than of law."

\* \* \* \*

". . . it is not necessary that there should be actual danger, provided the defendant acts upon a reasonable apprehension of danger. But the court further said that it is the duty of the householder to prevent the entry by means not fatal, if he can do so consistently with his own safety. So it may be said that if the defendant kills where there are no reasonable grounds of apprehension of danger, it is manslaughter; and if the killing is done with malice, express or implied, it is murder. Even though the deceased is attempting at the time unlawfully to enter the defendant's dwelling house, if the killing is with malice and ill will, and not for self-protection or the protection of the house, it is murder. . . . . . 'The law of self-defense, or the defense of one's domicile, does not require the giving to evil-minded persons an opportunity to take the life of another oh such easy terms.' "

If the jury found that there were no circumstances of mitigation, justification or excuse at the time of the killing, the fact that it was done with a deadly weapon, such as the

shotgun used by appellant is sufficient basis for a finding of implied malice. *Erby* v. *State*, 253 Ark. 603, 487 S.W. 2d 266; *Lillard* v. *State*, 236 Ark. 74, 365 S.W. 2d 144.

Since the evidence was clearly sufficient to support the verdict, we affirm the judgment.